THE HONORABLE JAMAL N. WHITEHEAD

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| MAKAH INDIAN TRIBE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>EXXON MOBIL CORPORATION,<br>EXXONMOBIL OIL CORPORATION,<br>BP P.L.C., BP AMERICA INC.,<br>CHEVRON CORPORATION,<br>CHEVRON USA, INC., SHELL PLC,<br>SHELL OIL COMPANY,<br>CONOCOPHILLIPS, CONOCOPHILLIPS<br>COMPANY, PHILLIPS 66, and PHILLIPS<br>66 COMPANY,<br><br>　　　　　Defendants. | No.  2:24-cv-00157-JNW<br>No.  2:24-cv-00158-JNW<br><br><br>**PLAINTIFFS' CONSOLIDATED**<br>**MOTION TO REMAND**<br><br><br>Noted for June 14, 2024 |
| SHOALWATER BAY INDIAN TRIBE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>EXXON MOBIL CORPORATION,<br>EXXONMOBIL OIL CORPORATION,<br>BP P.L.C., BP AMERICA INC.,<br>CHEVRON CORPORATION,<br>CHEVRON USA, INC., SHELL PLC,<br>SHELL OIL COMPANY,<br>CONOCOPHILLIPS, CONOCOPHILLIPS<br>COMPANY, PHILLIPS 66, and PHILLIPS<br>66 COMPANY,<br><br>　　　　　Defendants. | |

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

## **<u>TABLE OF CONTENTS</u>**

I.      **INTRODUCTION** ................................................................................................. **1**

II.     **BACKGROUND** .................................................................................................. **2**

      A.     The Tribes' State Court Actions and Claims ....................................................... 2

      B.     Defendants' Notices of Removal ......................................................................... 3

III.    **ARGUMENT** ....................................................................................................... **3**

      A.     Governing Legal Standards ................................................................................. 4

      B.     The Complaints Do Not Present a Federal Question Because No
Federal Cause of Action Appears on Their Face. ............................................... 8

      C.     The Complete Preemption Exception Does Not Apply Because
No Federal Statutory Cause of Action Displaces the Tribes'
State-Law Claims. ............................................................................................... 8

      D.     Federal Common Law Principles Expressed in *Oneida* Cannot
Completely Preempt the Tribes' State-Law Nuisance and Failure to
Warn Claims. ...................................................................................................... 9

            1.     The *Oneida* Cases Recognized a Federal Common Law Cause
of Action in Indian Tribes for Violations of Aboriginal Title. .............. 10

            2.     The Tribes Do Not Allege Violations of Aboriginal Title,
So Their State-Law Causes of Action Could Not Be
Recharacterized as *Oneida*-Type Claims Under a Complete
Preemption-Style Analysis. ................................................................... 12

      E.     The *Grable* Exception Is Inapplicable Because the Tribes' State-Law
Complaints Do Not Necessarily Raise Any Substantial and Disputed
Federal Issue. ..................................................................................................... 16

      F.     The Cases Relied Upon By Defendants Do Not Comport With
Supreme Court and Ninth Circuit Standards Governing Federal-Question
Jurisdiction, Do Not Address the Issue, or Are Distinguishable. ...................... 19

            1.     *County of Mono* and the Cases Upon Which It Relies Do
Not Comport With the Now Well-Established and Clear Rules
Governing Federal-Question Jurisdiction and Are Distinguishable. ...... 19

            2.     *Milner*, *Swinomish*, and *Cranford* Do Not Support Jurisdiction. .......... 23

            3.     *Acoma Pueblo* Does Not Comport with the Current State of
the Law and Is Distinguishable. ............................................................ 25

IV.    **CONCLUSION** ............................................................................................... **27**

PLAINTIFFS' CONSOL. MOT. TO REMAND      i

No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Acoma Pueblo v. American Tobacco Co.*,
    2001 WL 37125252 (D.N.M. Feb. 20, 2001) ........................................................ 25, 26, 27

*Amoco Prod. Co. v. Vill. of Gambell*,
    480 U.S. 531 (1987).................................................................................................... 10

*Anne Arundel Cnty. v. BP P.L.C.*,
    94 F.4th 343 (4th Cir. 2024) ........................................................................................ 1

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
    25 F.4th 1238 (10th Cir. 2022) ......................................................................... 1, 15, 17

*Begay v. Kerr-McGee Corp.*,
    499 F. Supp. 1317 (D. Ariz. 1980) ............................................................................. 21

*Beneficial Nat'l Bank v. Anderson*,
    539 U.S. 1 (2003)................................................................................................. *passim*

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987)............................................................................................. *passim*

*City & Cnty. of Honolulu v. Sunoco LP*,
    39 F.4th 1101 (9th Cir. 2022) ...................................................................................... 1

*City of Hoboken v. Chevron Corp.*,
    45 F.4th 699 (3d Cir. 2022) ......................................................................................... 1

*City of Oakland v. BP PLC*,
    969 F.3d 895 (9th Cir. 2020) ............................................................................... *passim*

*City of Oakland v. BP PLC*,
    No. 22-16810, 2023 WL 8179286 (9th Cir. Nov. 27, 2023) ........................................ 1

*Cnty. of San Mateo v. Chevron Corp.*,
    32 F.4th 733 (9th Cir. 2022) ................................................................................ *passim*

*Cherokee Nation v. Morris & Dickson, Co.*,
    6:23-cv-00237-RAW-DES (E.D. Okla. March 19, 2024) (attached as Ex. A) .................... 27

PLAINTIFFS' CONSOL MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

ii

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

*Connecticut v. Exxon Mobil Corp.*,
  83 F.4th 122 (2d Cir. 2023) ................................................................... 1

*County of Mono v. Liberty Utilities Calpeco Electric, LLC*,
  2021 WL 3185478 (C.D. Cal. May 6, 2021) ...................................... 19, 20, 21, 23

*County of Oneida v. Oneida Indian Nation of N.Y. State*,
  470 U.S. 226 (1985).................................................................... *passim*

*District of Columbia v. Exxon Mobil Corp.*,
  89 F.4th 144 (D.C. Cir. 2023) .............................................................. 1

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr.*,
  463 U.S. 1 (1983)................................................................. 5, 7, 13, 14

*Gaus v. Miles, Inc.*,
  980 F.2d 564 (9th Cir. 1992) ............................................................... 4

*Gila River Indian Cmty. v. Henningson, Durham & Richardson*,
  626 F.2d 708 (9th Cir. 1980) ................................................... 6, 21, 22, 23

*Gila River Indian Cmty. v. Cranford*,
  459 F. Supp. 3d 1246 (D. Ariz. 2020) ................................................... 25

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
  545 U.S. 308 (2005)................................................................. *passim*

*Gully v. First Nat'l Bank*,
  299 U.S. 109 (1936)............................................................... 4, 23, 27

*Gunn v. Minton*,
  568 U.S. 251 (2013)............................................................... *passim*

*Idaho v. United States*,
  533 U.S. 262 (2001)............................................................... 10

*Lehmann v. Brown*,
  230 F.3d 916 (7th Cir. 2000) ............................................................ 6, 7

*Mayor & City Council of Balt. v. BP P.L.C.*,
  31 F.4th 178 (4th Cir. 2022) ............................................................... 1

*McGirt v. Oklahoma*,
  140 S. Ct. 24522 (2020 .................................................................... 14

PLAINTIFFS' CONSOL MOT. TO REMAND          iii
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*,
  578 U.S. 374 (2016)......................................................................... 3, 7, 8, 19

*Mescalero Apache Tribe v. Burgett Floral Co.*,
  503 F.2d 336 (10th Cir. 1974) ........................................................ 21, 22, 23

*Metro. Life Ins. Co. v. Taylor*,
  481 U.S. 58 (1987)....................................................................................... 9

*Michigan v. Bay Mills Indian Cmty.*,
  572 U.S. 7820 (2014).............................................................................. 14, 15

*Minnesota v. Am. Petroleum Inst.*,
  63 F.4th 703 (8th Cir. 2023) .................................................................... 1, 13

*Newtok Vill. v. Patrick*,
  21 F.4th 608 (9th Cir. 2021) ......................................................................... 5

*Nez Perce Tribe v. Idaho Power Co.*,
  847 F. Supp. 791 (D. Idaho 1994) ............................................................... 17

*Oneida Indian Nation v. County of Oneida*,
  414 U.S. 661 (1974)............................................................................. *passim*

*Owens Valley Indian Hous. Auth. v. Turner*,
  185 F.3d 1029 (9th Cir. 1999) ............................................................ 19, 20, 22

*Pueblo of Isleta v. Universal Constructors, Inc.*,
  570 F.2d 300 (10th Cir. 1978) ........................................................... 21, 22, 23

*Rhode Island v. Shell Oil Prods. Co.*,
  35 F.4th 44 (1st Cir. 2022)............................................................................ 1

*Rivet v. Regions Bank of La.*,
  522 U.S. 470 (1998)..................................................................................... 7

*Romero v. Int'l Terminal Operating Co.*,
  358 U.S. 354 (1959)..................................................................................... 7

*Round Valley Indian Housing Authority v. Hunter*,
  907 F. Supp. 1343 (N.D. Cal. 1995) ............................................................ 21

*Santa Clara Pueblo v. Martinez*,
  436 U.S. 492 (1978)................................................................................... 14

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

*Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*,
   951 F.3d 1142 (9th Cir. 2020) ........................................................ 23, 24

*Tafflin v. Levitt*,
   493 U.S. 455 (1990) ......................................................................... 7

*Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.*,
   467 U.S. 138 (1984) ......................................................................... 4

*United States v. Milner*,
   583 F.3d 1174 (9th Cir. 2009) ........................................................ 23, 24

*United States v. Santa Fe Pac. R.R. Co.*,
   314 U.S. 339 (1941) ......................................................................... 10

*United States v. Wheeler*,
   435 U.S. 3133 (1978 ....................................................................... 15

**Statutes**

25 U.S.C. § 177 ................................................................................... 11

28 U.S.C. § 1331 ............................................................................ *passim*

28 U.S.C. § 1345 ................................................................................. 24

28 U.S.C. § 1362 ............................................................................ *passim*

28 U.S.C. § 1441(a) ............................................................................. 5

Revised Code of Washington 7.48 ...................................................... 2

Revised Code of Washington 7.72 ...................................................... 2

**Other Authorities**

13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
   § 3562 (3d ed. 2008) ..................................................................... 8, 19

F. Cohen, *Handbook of Federal Indian Law* § 7.04[1][a]
   (2012 ed.) ......................................................................................... 4

F. Cohen, *Handbook of Federal Indian Law* § 19.03[1]
   (2012 ed.) ......................................................................................... 25

Restatement of the Law of American Indians § 77
   (Am. L. Inst. 2021) ......................................................................... 10

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

v

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

## I.  INTRODUCTION

Plaintiffs, the Makah Indian Tribe and the Shoalwater Bay Indian Tribe ("Plaintiffs," or the "Tribes"), are two federally recognized Indian tribes. They move to remand these cases to the King County Superior Court, where they were filed and where they belong. The Tribes' complaints allege only state-law causes of action that do not "arise under" federal law within the meaning of 28 U.S.C. § 1331 and § 1362, and thus cannot supply subject-matter jurisdiction based on a federal question under the well-pleaded complaint rule. The complaints do not plead any federal cause of action on their face, and neither of the well-pleaded complaint rule's narrow exceptions applies: the Tribes' two state-law claims are not "completely preempted" by a federal statute that supplies a substitute cause of action, and do not present any substantial, disputed federal issue as a necessary element.

The Ninth Circuit has recently affirmed orders remanding materially similar cases as improperly removed from state court, and the result here must be the same. *See Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1797 (2023); *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2776 (2021); *see also City of Oakland v. BP PLC*, No. 22-16810, 2023 WL 8179286 (9th Cir. Nov. 27, 2023); *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023).[1] The fact that Plaintiffs are federally recognized Indian tribes whose complaints allege injuries to tribal lands and harm to public health is of no jurisdictional significance.

---

[1] In addition to the Ninth Circuit, seven other federal courts of appeals have affirmed remand orders in analogous climate deception cases without dissent. *See Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 1796 (2023); *Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122 (2d Cir. 2023); *City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022), *cert. denied*, 143 S. Ct. 2483 (2023); *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *Anne Arundel Cnty. v. BP P.L.C.*, 94 F.4th 343 (4th Cir. 2024); *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 620 (2024); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.* (*Boulder*), 25 F.4th 1238 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1795 (2023); *District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144 (D.C. Cir. 2023).

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

1

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

Bedrock jurisprudence dating to the nineteenth century provides that, absent diversity, "the plaintiff is the master of the claim and can generally avoid federal jurisdiction" when proceeding solely under state law. *San Mateo*, 32 F.4th at 746 (cleaned up). The Tribes' claims are not removable and must be remanded to the King County Superior Court.

## II.    BACKGROUND

### A.    The Tribes' State Court Actions and Claims

On December 20, 2023, the Tribes sued Defendants in the King County Superior Court. *See generally* Makah Indian Tribe Compl., No. 2:24-cv-00157, Dkt. 1-1 ("Makah Compl."); Shoalwater Bay Indian Tribe Compl., No. 2:24-cv-00158, Dkt. 1-1 ("SBIT Compl."). The Tribes assert two state-law statutory causes of action: (1) RCW 7.48 (Public Nuisance) and (2) RCW 7.72 (Failure to Warn). Makah Compl. ¶¶ 5.1–6.6 at p. 92–98; SBIT Compl. ¶¶ 5.1–6.6 at p. 92–97. The Tribes' aboriginal homelands on the Olympic Peninsula, bordering the Pacific Ocean, have for centuries supported their unique Indigenous communities. Makah Compl. ¶ 2.1 at p. 4; SBIT Compl. ¶ 2.1 at p. 4. But the Tribes are now faced with consequences of the climate crisis due to eroding shorelines, flooding, wildfires, and other climate change-induced destructive forces. Makah Compl. ¶¶ 4.186–4.188 at p. 89–92; SBIT Compl. ¶¶ 4.186–4.188 at p. 89–92. As set forth in their complaints, the Tribes have incurred, and will continue to incur, astronomical costs to relocate their communities and supporting infrastructure (e.g., schools, healthcare facilities, power and water systems, and government offices). Makah Compl. ¶ 1.7 at p. 3–4, ¶¶ 4.187(a)–4.188 at p. 90–92; SBIT Compl. ¶¶ 1.7 at p. 3–4, ¶¶ 4.187(a)–4.188 at p. 90–92.

Defendants have known since at least the 1950s that severe climatic harms would flow from the normal, intended use of their fossil fuel products. Rather than share that knowledge with consumers or the public, however, they embarked upon a sophisticated enterprise of deception, denying the existence of the crisis to sustain consumption of their products and to increase profits. *E.g.*, Makah Compl. ¶¶ 1.1–1.6 at p. 1–3, ¶¶ 4.2–4.125 at p. 14–61; SBIT Compl. ¶¶ 1.1–1.6 at p. 1–3, ¶¶ 4.2–4.125 at p. 14–61. In so doing, Defendants violated state

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

2

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

law: to the harm and detriment of the Tribes, they have created a public nuisance and violated the Washington Product Liability Act by failing to warn and misleading the public about the dire consequences of their products' use. Makah Compl. ¶¶ 4.183–4.185 at p. 88–89, ¶¶ 5.1–5.15 at p. 92–97; SBIT Compl. ¶¶ 4.183–4.185 at p. 88–89, ¶¶ 5.1–5.15 at p. 92–97. The Tribes seek abatement, damages, and other relief from Defendants so their communities can survive the consequences of the climate crisis caused by Defendants' tortious conduct in violation of Washington state law. Makah Compl. ¶¶ 6.1–6.6 at p. 97–98; SBIT Compl. ¶¶ 6.1–6.6 at p. 97.

### B.   Defendants' Notices of Removal

On February 6, 2024, pursuant to substantially similar Notices of Removal ("NOR"), Defendants removed the Tribes' complaints to this Court. Defendants assert this Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1362 because the Tribes' claims involve (a) harm to their lands and resources and (b) public health care costs, both of which Defendants claim implicate federal issues and thus confer federal-question jurisdiction. *See* Makah Notice of Removal, No. 2:24-cv-00157, Dkt. 1 ("Makah NOR"), ¶¶ 7–14 at p. 4–7; Notice of Removal, No. 2:24-cv-00158, Dkt. 1 ("SBIT NOR"), ¶¶ 7–14 at p. 4–7.

## III.   ARGUMENT

Well-established Supreme Court and Ninth Circuit precedent governing federal-question jurisdiction requires remanding these cases to state court. For many decades, the Supreme Court's jurisprudence addressing this area was, in the Court's words, "muddled" and "highly 'unruly.'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374, 385 (2016) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Beginning with its decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), the Court has worked steadily to clarify the analysis courts should use to determine whether federal-question jurisdiction exists over a complaint pleading only state-law claims. The Ninth Circuit recently applied those standards in two analogous cases by local governments, against many of

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

3

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

the same Defendants here, that sought relief under state tort law for climate change harms caused by the same alleged tortious conduct. *See San Mateo*, 32 F.4th 733; *Oakland*, 969 F.3d 895.

The only distinction between this case and the *Oakland* and *San Mateo* cases—that Plaintiffs are federally recognized Indian tribal governments—is immaterial. Like any plaintiff the Tribes have the prerogative to avail themselves of state-law tort claims in a state court. Contrary to the gist of Defendants' Removal Notices, the mere presence of an Indian tribe plaintiff, or a claim arising in Indian country, does not give rise to federal-question jurisdiction. *See Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.*, 467 U.S. 138, 148–49 (1984) (the Court "repeatedly has approved the exercise of jurisdiction by state courts over claims by Indians against non-Indians, even when those claims arose in Indian country"); F. Cohen, *Handbook of Federal Indian Law* § 7.04[1][a], p. 611 (2012 ed.) (Cohen) (same). Defendants' contrary arguments violate first principles of federal-question jurisdiction; their suggestion "that a question of federal law is lurking in the background . . . is unavailing to extinguish the jurisdiction of the states." *Gully v. First Nat'l Bank*, 299 U.S. 109, 117 (1936); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 399 (1987) ("[A] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law . . . ."). The *Oakland* and *San Mateo* decisions directly control and require remand.

## A.     Governing Legal Standards

Unlike state courts, "[f]ederal courts are courts of limited jurisdiction," *Gunn*, 568 U.S. at 256 (cleaned up). For that reason, "[s]tatutes extending federal jurisdiction are narrowly construed so as not to reach beyond the limits intended by Congress." *Oakland*, 969 F.3d at 903 (cleaned up). Court apply a "'strong presumption' against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

4

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a), meaning that "state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant," *Caterpillar*, 482 U.S. at 392. Defendants argue for jurisdiction based on 28 U.S.C. § 1331 and § 1362, which provide district courts original jurisdiction over cases presenting federal questions, namely cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331[2]; *id.* § 1362.[3] Sections 1331 and 1362 are "largely duplicative." *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021). Both require "the existence of a claim that arises under" federal law, *id.*, and both are analyzed under the same standard, *see id.* at 616–19; *Gila River Indian Cmty. v. Henningson, Durham & Richardson*, 626 F.2d 708, 714 (9th Cir. 1980).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 392. The well-pleaded complaint rule is a "powerful doctrine," *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983), that empowers plaintiffs to "avoid federal jurisdiction by exclusive reliance on state law," *Caterpillar*, 482 U.S. at 392. Jurisdiction exists under that rule only if the plaintiff's own statement of its claim establishes that "federal law creates the cause of action asserted." *Gunn*, 568 U.S. at 257. It is likewise "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the

---

[2] Section 1331 provides:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[3] Section 1362 provides:

> The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

5

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393. This so-called "'creation test' . . . accounts for the vast bulk of suits that arise under federal law" and "admits of only extremely rare exceptions" in which a claim pleaded under state law nonetheless arises under federal law for jurisdictional purposes. *Id.* at 257 (citation omitted). The Supreme Court and Ninth Circuit have recognized just two: (1) the exception articulated in *Grable*, 545 U.S. 308, and (2) the "doctrine of complete preemption." *San Mateo*, 32 F.4th at 746.

The Ninth Circuit reiterated the scope and application of both exceptions in *San Mateo*. The court started with *Grable*:

> *Grable* affirmed a long line of Supreme Court cases that recognized an exception to the well-pleaded complaint rule when federal law is a necessary element of the plaintiff's claim for relief. Only a few cases have ever fallen into this narrow category. Under this exception, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. If those requirements are met, federal jurisdiction exists because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

*Id.* at 746–47 (cleaned up). "All four requirements must be met for federal jurisdiction to be proper." *Oakland*, 969 F.3d at 904–05.

The second exception, "complete preemption," allows removal when a federal statute establishes a cause of action that "completely preempts a plaintiff's state-law claim." *Id.* at 905 (cleaned up). This occurs only when the preemptive force of the statute "is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *San Mateo*, 32 F.4th at 748 (quoting *Caterpillar*, 482 U.S. at 393). "To have this effect, a federal statute must 'provide[] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action.'" *Oakland*, 969 F.3d at 905 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). "Unfortunately, 'complete preemption' is a misnomer, having nothing to do with preemption and everything to do with federal occupation of a field. The name misleads because,

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

6

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

when federal law occupies the field (as in labor law), *every* claim arises under federal law." *Lehmann v. Brown*, 230 F.3d 916, 919 (7th Cir. 2000) (Easterbrook, J.) (citations omitted). "State law is 'completely preempted' in the sense that it has been replaced by federal law—but this happens because federal law takes over all similar claims, not because there is a preemption defense." *Id.* at 919–20.[4] Based on those principles, the Ninth Circuit has summarized two core requirements for complete preemption: Congress must "(1) intend[] to displace a state-law cause of action, and (2) provide[] a substitute cause of action." *Oakland*, 969 F.3d at 906. Complete preemption is extremely rare; "[t]he Supreme Court has identified only three statutes that meet this criteria," none of which are at issue here. *Id.* at 905.

The foregoing rules reflect the Supreme Court's "deeply felt and traditional reluctance" to "expand the jurisdiction of the federal courts through a broad reading of jurisdictional statutes." *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 379 (1959). State courts are presumptively competent to resolve issues of federal law that may present themselves in a given case, *see, e.g.*, *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990), and the Supreme Court has repeatedly held that it is "less troubling for a state court to consider such an issue than to lose all ability to adjudicate a suit raising only state-law causes of action," *Manning*, 578 U.S. at 392. Such suits are removable on federal-question grounds *only* when one of the well-pleaded complaint rule's two exceptions is satisfied. *See San Mateo*, 32 F.4th at 746–48; *Oakland*, 989 F.3d at 903–06.

---

[4] Complete preemption is sometimes "referred to as the 'artful-pleading doctrine,'" *Oakland*, 969 F.3d at 905, because it implements Congress's intent that any claim within the scope of a certain federal statute is "purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of" the statute, *Franchise Tax Bd.*, 463 U.S. at 23. In that circumstance, federal-question jurisdiction will exist "even though no federal question appears on the face of the plaintiff's complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998); *see also id.* ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim.").

**B.      The Complaints Do Not Present a Federal Question Because No Federal Cause of Action Appears on Their Face.**

Defendants' arguments for removal jurisdiction stumble immediately on the well-pleaded complaint rule for the simple reason that the Tribes' complaints assert only state-law causes of action. No federal cause of action appears on the face of the complaints, and Defendants must therefore satisfy the *Grable* or complete preemption exceptions. As noted above, the jurisprudence addressing those exceptions was, in the Supreme Court's words, "muddled" for many years. *Manning*, 578 U.S. at 385. The judicial landscape changed dramatically in 2005, however, when the Court in *Grable* laid out rules "to bring some order to this unruly doctrine." *Gunn*, 568 U.S. at 258; *see id.* ("[W]e do not paint on a blank canvas[,] [but] [u]nfortunately, the canvas looks like one that Jackson Pollock got to first.").

Notwithstanding the Court's efforts, lower courts have shown some continuing difficulty in applying the appropriate post-*Grable* standard, "exacerbated by the tendency of some courts to repeat—quite uncritically—language from earlier decisions as a substitute for analysis of the case that is actually before them." 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3562 (3d ed. 2008) ("Wright & Miller"). Defendants' arguments invite this Court to do just that, and much of the authority on which they principally rely falls prey to lingering confusion the Supreme Court has sought to relieve.

**C.      The Complete Preemption Exception Does Not Apply Because No Federal Statutory Cause of Action Displaces the Tribes' State-Law Claims.**

The complete preemption exception to the well-pleaded complaint rule plainly does not apply here. As set forth above, the exception operates only where Congress enacts a statute of "extraordinary preemptive force" that provides a federal cause of action intended to substitute for any state-law cause of action within its scope. *Oakland*, 969 F.3d at 907. The Supreme Court has identified only "three statutes" with that power. *Id.* at 905. Importantly, complete preemption exists only where Congress has "clearly manifested an intent" through a statute to displace a state-law cause of action with a federal one—i.e., to provide a federal cause of action that is

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

8

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

"exclusive." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66 (1987). Therefore, "the proper inquiry focuses on whether Congress intended the [statutory] federal cause of action to be exclusive" in a particular field, not "whether Congress intended state-law claims in that field to be removable." *Beneficial Nat'l Bank*, 539 U.S. at 9, n.5.

Defendants fail to identify any federal statute that completely preempts the Tribes' state-law claims for nuisance and failure to warn to recover for the climate-related damages caused by Defendants' deceptive conduct, because there is none. Complete preemption thus cannot serve as a basis for removal jurisdiction.

### D. Federal Common Law Principles Expressed in *Oneida* Cannot Completely Preempt the Tribes' State-Law Nuisance and Failure to Warn Claims.

Unable to satisfy show that any statute completely preempts the Tribes' claims, Defendants work to invoke federal *common law* as a basis for complete preemption. *See* Makah NOR ¶ 16 at p. 8, ¶ 22 at p. 10–11; SBIT NOR ¶ 16 at p. 8, ¶ 21 at p. 10. But the legal reality that complete preemption is grounded in congressional intent is fatal to Defendants' effort.

To understand why Defendants are incorrect requires an examination of *Oneida Indian Nation v. County of Oneida* (*Oneida I*), 414 U.S. 661 (1974), and *County of Oneida v. Oneida Indian Nation of New York State* (*Oneida II*), 470 U.S. 226 (1985) (collectively, "*Oneida*"), which are the baseline decisions underlying Defendants' removal notices and every case Defense cite for the proposition that the Tribes' state-law claims are "completely preempted" because they allege harms to tribal lands and natural resources. *See, e.g.*, Makah NOR at 1 (citing *Oneida I*); *id.* ¶ 16 at p. 8 (citing *Oneida I* and *Oneida II*); *id.* ¶ 22 at p. 10–11 (citing *Oneida I*); *id.* ¶ 15 at p. 7, ¶ 18 at p. 8 (citing cases relying on *Oneida*); SBIT NOR at 1, ¶¶ 15–16 at p. 7–8, ¶ 18 at p. 8, ¶ 21 p. 10 (same). *Oneida* supports no such proposition.

The terms "aboriginal title," "Indian title," and the Indian "right of occupancy" or "right to possession" are all used interchangeably to describe the same thing: "[the] exclusive use and occupancy held by Natives in lands and waters used by them and their ancestors prior to the

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

9

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

assertion of sovereignty over such areas by the United States." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 536 n.4 (1987) (citation and quotations omitted); *see also Oneida II*, 470 U.S. at 234–35; *Oneida I*, 414 U.S. at 666–69; *Idaho v. United States*, 533 U.S. 262, 265–66 (2001); *United States v. Santa Fe Pac. R.R. Co.*, 314 U.S. 339, 345 (1941). That Indian right of occupancy necessarily flows from federal sovereign authority, not that of the states, such that claims seeking to vindicate that right arise under federal law. The *Oneida* plaintiffs' claims aorse under federal law because they required proving aboriginal title as a *prima facie* element, and expressly sought to enforce aboriginal title rights. The Tribes' claims here do not.

### 1. The *Oneida* Cases Recognized a Federal Common Law Cause of Action in Indian Tribes for Violations of Aboriginal Title.

Foundational Supreme Court property law decisions address the process through which the Native Nations that occupied America before the coming of Europeans lost their rights to the lands they had occupied from time immemorial. *See Oneida I*, 414 U.S. at 668 (citing cases). By means of the "discovery doctrine," a legal fiction grounded in presumed Christian superiority over the Indigenous peoples of America, the first European nation to "discover" an area took "ultimate title" to the land, subject to "aboriginal title"—the continued exclusive use and occupation of the Native Nation in possession of the land—until "extinguished" by the "discovering" European nation by conquest or purchase. *See Oneida II*, 470 U.S. at 234 & n.3 (explaining the discovery doctrine); Restatement of the Law of American Indians § 77 (Am. L. Inst. 2021) (same). The Court explained in *Oneida I*:

> It very early became accepted doctrine in this Court that although fee title to the lands occupied by Indians when the colonists arrived became vested in the sovereign—first the discovering European nation and later the original States and the United States—a right of occupancy in the Indian tribes was nevertheless recognized. . . . Indian title, recognized to be only a right of occupancy, was extinguishable only by the United States. The Federal Government took early steps to deal with the Indians through treaty, the principal purpose often being to recognize and guarantee the rights of Indians to specified areas of land. . . . The United States also asserted the primacy of federal law in the first Nonintercourse Act passed in 1790, . . . which provided that 'no sale of lands made by any Indians . . . within the United States, shall be valid to any person . . . or to any state . . . unless the same shall be made and duly executed at some public treaty, held under

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

10

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

the authority of the United States.' This has remained the policy of the United States to this day.

*Oneida I*, 414 U.S. at 667–68 (citations omitted). The Indian Nonintercourse Act "merely codified the principle that a sovereign act was required to extinguish aboriginal title and thus that a conveyance without the sovereign's consent was void ab initio." *Oneida II*, 470 U.S. at 245; 25 U.S.C. § 177.

In *Oneida*, the Oneida Indian Nation of New York State and the Oneida Indian Nation of Wisconsin (the "Oneidas") sued two New York counties in federal district court, alleging that "from time immemorial down to the time of the American Revolution the Oneidas had owned and occupied some six million acres of land in the State of New York"; that their treaties with the United States in the 1780s and 1790s confirmed "the Indians' right to possession of their lands until purchased by the United States"; and that those treaties were "implemented by . . . the Nonintercourse Act . . . , forbidding the conveyance of Indian lands without the consent of the United States." *Oneida I*, 414 U.S. at 663–64. The Oneidas alleged that their land cessions of over five million acres to the State of New York in 1788 and 1795 were "without the consent of the United States and hence ineffective to terminate the Indians' right to possession under the federal treaties and the applicable federal statutes." *Id.* at 664–65. The Oneidas asserted federal-question jurisdiction pursuant to 28 U.S.C. § 1331 and § 1362. *See id.* at 663.

"The District Court ruled that the cause of action, regardless of the label given it, was created under state law and required only allegations of the plaintiffs' possessory rights and the defendants' interference therewith." *Id.* at 665. Thus, it dismissed the case "for want of subject matter jurisdiction," viewing the Tribes' reliance upon federal law and treaties as an attempt "to resolve a potential defense" that could not give rise to federal-question jurisdiction. *Id.* The Second Circuit affirmed, stating that the Tribes' jurisdictional claim "shatters on the rock of the 'well-pleaded complaint' rule for determining federal question jurisdiction." *Id.* (cleaned up).

The Supreme Court reversed. The Court pointed out that by the Oneidas' complaint, "the right to possession itself is claimed to arise under federal law in the first instance. Allegedly,

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

11

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

aboriginal title of an Indian tribe guaranteed by treaty and protected by statute has never been extinguished." *Oneida I*, 414 U.S. at 676. The Court explained:

> The threshold allegation required of such a well-pleaded complaint—the right to possession—was plainly enough alleged to be based on federal law. The federal law issue, therefore, did not arise solely in anticipation of a defense. . . . Given the nature and source of the possessory rights of Indian tribes to their aboriginal lands, particularly when confirmed by treaty, it is plain that the complaint asserted a controversy arising under the Constitution, laws, or treaties of the United States within the meaning of both § 1331 and § 1362.

*Oneida I*, 414 U.S. at 666–67.

The Oneidas prevailed at trial and the defendants appealed, this time arguing "that the Oneidas did not have a federal common law cause of action" to vindicate their aboriginal right of occupancy. *Oneida II*, 470 U.S. at 233; *see Oneida I*, 414 U.S. at 677 (characterizing the Oneidas' claim as "assert[ing] a present right to possession based on their aboriginal right of occupancy which was not terminable except by act of the United States"). The Court pointed to "[n]umerous decisions," including *Oneida I*, that "recognized at least implicitly that Indians have a federal common-law right to sue to enforce their aboriginal land rights," and held "[i]n keeping with these well-established principles" that "the Oneidas can maintain this action for violation of their possessory rights based on federal common law." *Oneida II*, 470 U.S. at 235–36.

### 2. The Tribes Do Not Allege Violations of Aboriginal Title, So Their State-Law Causes of Action Could Not Be Recharacterized as *Oneida*-Type Claims Under a Complete Preemption-Style Analysis.

Defendants assert that under *Oneida*, "purported state-law claims for alleged injury to tribal lands and natural resources are completely preempted by federal law," and thus "removal is proper regardless of how [the Tribes] characterize[] [their] claims." Makah NOR ¶ 23 at p. 11; SBIT NOR ¶ 22 at p. 10. Defendants' theory does not support removal for multiple reasons: it misunderstands the scope and operation of complete preemption, the holdings in *Oneida*, and the allegations in the Tribes' complaints.

As an initial matter, even if the aboriginal title cause of action recognized at federal common law in *Oneida II* could have complete preemptive force, the Tribes' state-law claims

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW
12
SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

here are not within the field that cause of action would cover. The *Oneida* plaintiffs' complaint explicitly "rest[ed] on the not insubstantial claim that federal law now protects, and has continuously protected from the time of the formation of the United States, possessory rights to tribal lands, wholly apart from the application of state law principles," and "assert[ed] a present right to possession based in part on their aboriginal right of occupancy which was not terminable except by act of the United States." *Oneida I*, at 414 U.S. at 677–78. Aboriginal title is simply not at stake here—the Tribes have brought no claims "to enforce their aboriginal land rights," and do not allege violations of their "exclusive possession of their lands" or "violation[s] of their possessory rights." *Oneida II*, 470 U.S. at 235–36. The Tribes' Washington-law public nuisance and product liability claims are nothing like the claims at issue in *Oneida*.

Second, there is no support for Defendants' position that the federal common law rule recognized in *Oneida* could completely preempt state law, which would require clear congressional intent expressed in a statute that provides an exclusive cause of action. *See Oakland*, 969 F.3d at 905–06, 907–08; *San Mateo*, 32 F.4th at 748. "Because Congress has not acted, the presence of federal common law" untethered to a statute "does not express Congressional intent of any kind—much less intent to completely displace any particular state-law claim," and thus cannot completely preempt state law. *Minnesota*, 63 F.4th at 710 (affirming remand in similar climate-injury case); *Boulder*, 25 F.4th at 1261 (same).

The Supreme Court likened the jurisdictional holding in *Oneida I* to the complete preemption doctrine twice in dicta in the 1980s, both times in footnotes. The Court has never characterized jurisdiction under *Oneida I* as a species of complete preemption, however, and the Court's more recent cases confirm that it is not. In *Franchise Tax Board*, after discussing complete preemption, the Court stated "[t]o similar effect is *Oneida [I]* . . . , in which we held that . . . an ejectment suit based on Indian title is within the original 'federal question' jurisdiction of the district courts." 463 U.S. at 23 n.25. And in *Caterpillar*, 482 U.S. at 393 n.8, after restating the complete preemption doctrine, the Court cited *Oneida I* with a descriptive parenthetical as

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

13

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

follows: "*Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 675 (1974) (state-law complaint that alleges a present right to possession of Indian tribal lands necessarily 'asserts a present right to possession under federal law,' and is thus completely pre-empted and arises under federal law)." The Court has since backed away from the analogy, however. In *Beneficial National Bank*, the Court noted that it had only recognized complete preemption where "the federal statutes at issue provided the exclusive cause of action for the claim asserted." *Beneficial Nat'l Bank*, 539 U.S. at 8. In a footnote within that sentence, the Court wrote:

> This Court has also held that federal courts have subject-matter jurisdiction to hear possessory land claims under state law brought by Indian tribes because of the uniquely federal "nature and source of the possessory rights of Indian tribes." *Oneida [I]*, 414 U.S. [at] 667. Because that case turned on the special historical relationship between Indian tribes and the Federal Government, *it does not assist the present analysis*.

*Id.* at 8, n.4 (emphasis added). Thus, whatever significance one might attribute to the Court's comparison of *Oneida I* to complete preemption in the *Franchise Tax Board* and *Beneficial National Bank* footnotes, by 2003, the Court retreated from the analogy: *Oneida I* "does not assist the [complete preemption] analysis."

The Court's distancing of *Oneida I* from complete preemption is understandable for two reasons. First, as discussed, complete preemption hinges on congressional intent that is absent by definition when a federal court creates common law. That is especially so in the field of Indian affairs, where the Court has consistently deferred to Congress's constitutional plenary authority while recognizing the "enduring principle" that while "Congress has plenary authority over tribes, courts will not lightly assume that Congress in fact intends to undermine Indian self-government." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 790 (2014); *see also, e.g.*, *McGirt v. Oklahoma*, 140 S. Ct. 2452, 2462 (2020) (noting that "[o]nly Congress can divest a reservation of its land and diminish its boundaries," and "[i]f Congress wishes to break the promise of a reservation, it must say so" (citation omitted)); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 (1978) (declining to hold that Indian Civil Rights Act authorized federal

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

14

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

declaratory judgment actions against tribe "unless and until Congress makes clear its intention to permit the additional intrusion on tribal sovereignty that adjudication of such actions in a federal forum would represent"). "Thus, unless and 'until Congress acts, the tribes retain' their historic sovereign authority." *Bay Mills Indian Cmty.*, 572 U.S. at 788 (quoting *United States v. Wheeler*, 435 U.S. 313, 323 (1978)). Recognizing a completely preemptive federal common law cause of action would be especially inappropriate with respect to tribal rights.

Second, the holding in *Oneida I* is better understood today as applying the well-pleaded complaint rule exception that has since been synthesized in *Grable*, not the separate complete preemption exception. The Court held that the Oneidas' complaint "asserted a current right to possession conferred by federal law, wholly independent of state law," because "[t]he threshold allegation required of such a well-pleaded complaint—the right to possession—was plainly enough alleged to be based on federal law." 414 U.S. at 666. Stated differently, proving a federal right of possession was an essential element of the Oneidas' ejectment claim, and thus was necessarily raised on the face of the complaint. *Compare Grable*, 545 U.S. at 315 (sustaining jurisdiction where proof that plaintiff received inadequate notice of tax seizure under federal law was "an essential element of its quiet title claim"); *Gunn*, 568 U.S. at 259 (federal issue necessarily raised where causation element of state-law malpractice claim required proof plaintiff "would have prevailed in [a] federal patent infringement case" absent attorney negligence). A court considering *Oneida I* today would its result by applying *Grable*.

Finally, even assuming that (a) a judicial decision could mandate the complete preemption of state law with no direction from Congress and (b) the Court's two footnote characterizations of *Oneida I* suggest the existence of a federal common law cause of action with complete preemptive force, removal would still be improper. If the common law cause of action to vindicate aboriginal title recognized in *Oneida II* operated in the same manner as a statute with complete preemptive force, it would replace any state-law causes of action to establish aboriginal title—*and that's all*. Complete preemption operates only if a competing state-law

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

15

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

claim "comes within the scope of [the statutory] cause of action" established by Congress. *Beneficial Nat'l Bank*, 539 U.S. at 8; *see also Boulder*, 25 F.4th at 1256–57 ("[T]he federal remedy at issue must vindicate the same basic right or interest that would otherwise be vindicated under state law." (quotations omitted)). As discussed, none of the Tribes' claims here seek to vindicate aboriginal title, directly or indirectly. And importantly, the *Oneida II* cause of action does not supply a remedy for the claims the Tribes *have* asserted. The appropriate question, to paraphrase *Beneficial National Bank*, would be whether *Oneida II* provides the "exclusive cause of action" for the Tribes' nuisance and failure to warn claims. *See Beneficial Nat. Bank*, 539 U.S. at 9 ("Does the National Bank Act provide the exclusive cause of action for usury claims against national banks?"). The answer, of course, is a resounding "No."

In short, complete preemption doctrine has no bearing on this case.

### E.     The *Grable* Exception Is Inapplicable Because the Tribes' State-Law Complaints Do Not Necessarily Raise Any Substantial and Disputed Federal Issue.

These cases are not removable under *Grable* for the same fundamental reason they are not removable under complete preemption: the Tribes' complaints do not assert any right that requires proving any issue of federal law as an essential element, let alone a substantial one. *See, e.g.*, Makah NOR ¶ 11 at p. 6, ¶ 24 at p. 11; SBIT NOR ¶ 11 at p. 6, ¶ 23 at p. 10–11.

*Grable*'s facts are instructive. *Grable* involved a state-law quiet title action in which the plaintiff's *prima facie* case required resolving a substantial federal issue. There, the Internal Revenue Service seized and sold real property belonging to the plaintiff to satisfy the plaintiff's federal tax delinquency. 545 U.S. at 310–11. The plaintiff alleged that the seizure and sale were ineffective to divest it of title because the IRS had not complied with statutory notice requirements before the seizure. *Id.* at 311. The defendant buyer removed, arguing that "the claim of title depended on the interpretation of the notice statute in the federal tax law." *Id.* The Supreme Court agreed: because the plaintiff "premised its superior title [under state law] on a failure by the IRS to give it adequate notice, as defined by federal law," the IRS's alleged

noncompliance with the tax code formed "an essential element of its quiet title claim, and the meaning of the federal statute [was] actually in dispute." *Id.* at 314–15. The Court thus held that "recognition of federal jurisdiction is in order here." *Id.* at 316. In so holding, the Court articulated the now well-established standards for determining when a state-law claim gives rise to federal-question jurisdiction because of an embedded federal issue:

> [T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.

*Id.* at 314.

Unlike *Grable*, the Tribes' complaints here do not necessarily raise a disputed, substantial federal issue. Defendants say the Tribes' complaints necessarily raise their possessory rights to land and resources under *Oneida. See* Makah NOR at 1 (citing *Oneida I*); *id.* ¶ 11 at p. 6 (citing *Grable* for removal because the Tribes claim harms to lands over which they hold "a possessory right"); *id.* ¶ 16 at p. 8 (citing *Oneida I* and *Oneida II*); *id.* ¶ 20 at p. 9–10 ("the 'Indian right of possession' is at stake"); SBIT NOR at 1, ¶ 11 at p. 6, ¶ 16 at p. 8, ¶ 20 at p. 9–10 (same). As already discussed, that is simply not the case. None of the Tribes' claims require the Tribes to establish aboriginal title as in *Oneida*, nor is aboriginal title in dispute.

In their Notice of Removal for the Makah Indian Tribe's complaint, Defendants also assert that "federal question [jurisdiction] is reinforced" because the complaint "implicate[s]" certain "treaty rights" secured to the Tribe in 1855 concerning hunting, fishing, whaling, and foraging. Makah NOR ¶ 21 at p. 10. But the Makah complaint does not allege that it has been denied any right "created by treaty or other federal law," *id.* (quoting *Nez Perce Tribe v. Idaho Power Co.*, 847 F. Supp. 791, 799 (D. Idaho 1994)), and none of the state-law claims alleged require proof that those treaty rights have been violated. Defendants' argument that this case broadly "implicate[s]" the Makah's treaty rights is insufficient to satisfy *Grable. Id.*; *see Oakland*, 969 F.3d at 906–07 (rejecting *Grable* jurisdiction where defendants, "[r]ather than

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

identify a legal issue, . . . suggest[ed] that the [plaintiffs'] state-law claim implicate[d] a variety of 'federal interests,' including energy policy, national security, and foreign policy").

Defendants separately assert that because the Tribes' state-law complaints allege harms to public health and associated increased costs, federal interests are implicated "[b]ecause health care for tribal members is funded by the federal government." *See* Makah NOR ¶ 24 at 11; SBIT NOR ¶ 23 at 10–11. But just as with aboriginal title, the Tribes have made no allegations concerning federal health programs for Indian tribes, and no issue pertaining to those programs comprises an essential element of the Tribes' state-law claims. Defendants' assertion that "in many instances" costs of health care services are "derived from funds appropriated by the United States," Makah NOR ¶ 24 at p. 11; SBIT NOR ¶ 23 at p. 10–11, might at most present an affirmative *defense* to recovery of certain costs, not an element of the Tribes' claims. *See, e.g.*, *Caterpillar*, 482 U.S. at 392–93 (federal defenses do not provide bases for removal).

Defendants' federal health care argument also does not present a *substantial* federal question. "The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole," *Gunn*, 568 U.S. at 260, and indicia of substantiality include whether the plaintiff's cause of action "raises substantial questions as to the interpretation or validity of a federal statute, or . . . challenges the functioning of a federal agency or program," *Oakland*, 969 F.3d at 905 (cleaned up). An issue is *not* substantial where it is "fact-bound and situation-specific." *Id.* at 905 (cleaned up). Here, even if the Tribes' complaint referenced a federal health care program in tandem with their claim that Defendants' tortious conduct has caused harm to public health and associated increased costs, the Tribes' actual allegations are highly fact-bound and situation-specific, and the Tribes do not challenge any federal statute, agency, or program. There is no basis for *Grable* jurisdiction under any theory.

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

18

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

**F.     The Cases Relied Upon By Defendants Do Not Comport With Supreme Court and Ninth Circuit Standards Governing Federal-Question Jurisdiction, Do Not Address the Issue, or Are Distinguishable.**

     **1.     *County of Mono* and the Cases Upon Which It Relies Do Not Comport With the Now Well-Established and Clear Rules Governing Federal-Question Jurisdiction and Are Distinguishable.**

Defendants rely heavily on the unpublished decision in *County of Mono v. Liberty Utilities Calpeco Electric, LLC*, 2021 WL 3185478 (C.D. Cal. May 6, 2021), but that decision is both factually distinguishable and likely wrongly decided. The reasoning in *County of Mono* unfortunately appears to reflect "the tendency" discussed above "of some courts to repeat—quite uncritically—language from earlier decisions as a substitute for analysis" under the appropriate post-*Grable* removal framework. *See* Wright & Miller § 3562. The court did not cite *Grable* or discuss any case applying *Grable*, and mentioned complete preemption but did not identify any statute that completely preempted the plaintiffs' claims. No Ninth Circuit authority supports the court's conclusion that any case "in which tribes seek compensation for damages to tribal land" always arises under federal law, 2021 WL 3185478, at *4, and the court instead relied on *dicta* from two 1970s Tenth Circuit decisions mired in the "muddled backdrop" of federal-question jurisprudence at the time, *Manning*, 578 U.S. at 385. It does not support removal here.

The plaintiffs in *County of Mono*, including a federally recognized Indian tribe, Bridgeport Indian Colony ("Bridgeport"), sued California utility companies for damages arising from the 2020 "Mountain View Fire" in Mono County. 2021 WL 3185478, at *1. The complaint alleged the fire started when a live power line "fell onto dry vegetation, and ignited a wildfire that grew to over 20,000 acres." *Id.* The plaintiffs brought state common law claims for trespass, negligence, and nuisance, as well as state statutory claims. *Id.* A defendant removed, arguing:

> Plaintiff Bridgeport . . . seeks damages from Defendants "for trespass on [tribal] land, for restoration of the land to its original state or for irreparable injury to the land" and as such, federal jurisdiction exists because the Indian right of possession itself is at stake. *See* Notice of Removal ¶¶ 4, 21–22 (quoting *Owens Valley Indian Hous. Auth. v. Turner*, 185 F.3d 1029, 1033 n.4 (9th Cir. 1999), *reh'g granted and opinion withdrawn*, 192 F.3d 1330 (9th Cir. 1999), *appeal dismissed as moot*, 201 F.3d 444 (9th Cir. 1999)).

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

19

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

*Id.* The court agreed, stating "Bridgeport seeks damages from Defendants to tribal land caused by Defendants' alleged trespass and negligence. . . . As such, federal jurisdiction exists because the Indian right of possession is at stake. *See Owens Valley*, 185 F.3d at 1033 n.4." *Id.*

The *Owens Valley* decision relied upon in *County of Mono*, which is not binding precedent in any event,[5] did not support removal jurisdiction in that case and does not here either. In *Owens Valley*, the district court dismissed an eviction proceeding brought by an Indian housing authority in federal court against a tribal citizen for lack of federal-question jurisdiction. 185 F.3d at 1031–32. In an opinion subsequently withdrawn, the Ninth Circuit affirmed, describing standards tracking exactly what the Tribes have set forth above:

> "Indians have a federal common-law right to sue to enforce their aboriginal land rights." *Oneida II*, 470 U.S. at 235 . . . . *The problem for [the plaintiff], however, is that this case does not implicate the Bishop Tribe's federal right of possession.* We take as our guide on this point the Supreme Court's decision in *Oneida I* . . . . [T]he Court held that "[g]iven the nature and source of the possessory rights of Indian tribes to their aboriginal lands . . . , it is plain that the complaint asserted a controversy arising under the Constitution, laws, or treaties of the United States." *Id.* at 667 . . . .
>
> [F]ederal jurisdiction attaches only when resolution of the case *requires interpretation of a federal right of possession* . . . .

*Id.* at 1032–33 (emphasis added). Similar to Defendants' arguments here, the housing authority asserted that the eviction implicated "the Bishop Tribe's federal common law right to possess the property." *Id.* at 1033. "Not so," the Ninth Circuit said:

> To be sure, [the Indian housing authority's] position as a sub-lessor does depend on its lease with the Bishop Tribe, and the Bishop Tribe's ability to lease land to [the housing authority] derives from its federal right of possession. But because adjudication of [the housing authority's] suit does not require an interpretation of that federal right, the suit does not arise under federal law.

---

[5] The district court recognized that the Ninth Circuit opinion in *Owens Valley* could not be cited as precedent because it was withdrawn and the appeal was later dismissed as moot, but said it could be considered "for its persuasive value." *See Cnty. Of Mono*, 2021 WL 3185478, at *1 n.2.

*Id.* at 1033 (emphasis added).[6] In a footnote following this passage the court wrote, in dicta, what the case was *not*:

> This case does not . . . involve a non-Indian's alleged trespass or other encumbrance on Indian land. *See Pueblo of Isleta v. Universal Constructors, Inc.*, 570 F.2d 300 (10th Cir. 1978); *Mescalero Apache Tribe v. Burgett Floral Co.*, 503 F.2d 336 (10th Cir. 1974). In such cases, where a tribe seeks damages from a non-Indian "for trespass on the land, for restoration of the land to its original state or for irreparable injury to the land," [*Gila River Indian Cmty. v. Henningson, Durham & Richardson*, 626 F.2d 708, 715 n.8 (9th Cir. 1980)], federal jurisdiction exists because the Indian right of possession itself is at stake.

*Id.* at 1033 n.4. The district court in *County of Mono* rested its conclusion that "the Indian right of possession is at stake" entirely on the dicta in this footnote. *See* 2021 WL 3185478, at *3–4. That dicta, in turn, rested on the cited Tenth Circuit decisions from 1974 and 1978 and a footnote from the *Henningson* decision.

In *Henningson*, the plaintiff tribe brought claims against "an architectural firm and a building contractor for damages for the negligent design and construction of a Youth Center" on the tribe's reservation, asserting federal-question jurisdiction under 28 U.S.C. § 1362. 626 F.2d at 709. The court rejected the argument and held that, unlike in *Oneida I*, the tribe's claims did not implicate its "possessory rights . . . to tribal lands." *See id.* at 710–14. In so holding, it distinguished the Tenth Circuit's 1974 decision in *Mescalero Apache Tribe* and 1978 decision in *Pueblo of Isleta* as resting on the view that those cases "raised the issue of protection of the tribe's possessory rights." *See id.* at 713. The Ninth Circuit also rejected the Tribe's alternative argument that it should fashion a federal common law cause of action for breach of contract. *See id.* at 714–15. In a footnote to the last sentence of the opinion, the Court wrote in dicta and without citation:

---

[6] *Round Valley Indian Housing Authority v. Hunter*, 907 F. Supp. 1343 (N.D. Cal. 1995), a case cited by Defendants, supports the Tribes in exactly the same way. *See id.* at 1349 (complaint did not "claim a tribal possessory right based on the tribe's aboriginal right of occupancy"). The same is true of *Begay v. Kerr-McGee Corp.*, 499 F. Supp. 1317 (D. Ariz. 1980), also cited by Defendants. *See id.* at 1322 ("The tribe's possessory rights are in no way involved.").

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

21

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

> We also reject the Tribe's attempt to style the action as a tort action for damage to the Tribe's land. It is clear that the Tribe's claim rests upon the failure to perform contractual obligations. The damages sought were not for trespass on the land, for restoration of the land to its original state or for irreparable injury to the land, but rather for failure to perform under the design and construction contracts.

*Id.* at 715 n.8. As with *Owens Valley*, nothing in *Henningson*'s dicta actually holds that federal-question jurisdiction attached any time a tribe alleges injuries to land. The Ninth Circuit has never so held, and that result is not supported by *Oneida* or general federal-question principles.

That leaves the 1970s Tenth Circuit decisions in *Mescalero Apache Tribe* and *Pueblo of Isleta*. While the Ninth Circuit cited them in *Owens Valley* and *Henningson*, the court has never adopted them, and both out-of-circuit decisions significantly deviate from the since-settled standards for removal. Indeed, both cases were decided when *Oneida I* was newly minted—*Mescalero Apache Tribe* just months after *Oneida I*—and years before the Supreme Court held in *Oneida II* that the Oneidas had stated a federal common law claim for aboriginal title.

In *Mescalero Apache Tribe*, the tribe sued a local arborculture company in federal court, claiming that the company "entered on the[] reservation without permission and destroyed trees thereon, causing damage . . . in the amount of $5,000." 503 F.2d at 337. The district court held "without opinion" that it lacked subject-matter jurisdiction under 28 U.S.C. § 1362. *See id.* The Tenth Circuit reversed in a two-page decision, holding that federal jurisdiction could be sustained under *Oneida I* because it found that "[a]lmost by definition the right to sue in trespass is a 'possessory right'" akin to the Oneidas' claim for ejectment in *Oneida I*. *See id.* at 338. The Court did not analyze the well-pleaded complaint rule, and held that jurisdiction existed over the Tribe's claims even though "their title [wa]s clear and undisputed." *Id.* But *Oneida I* holds, as the Ninth Circuit recognized in *Owens Valley*, that federal-question jurisdiction can arise only from an *actual controversy* regarding the Oneidas' "aboriginal right of occupancy." *See Oneida I*, 414 U.S. at 677; *Owens Valley*, 185 F.3d at 1033 ("[J]urisdiction attaches only when resolution of the case requires *interpretation* of a federal right of possession."). That reading of *Oneida I* also comports with *Grable* given that jurisdiction requires a necessary, disputed, substantial

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

22

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

federal issue and not merely "a question of federal law [] lurking in the background." *See Gully*, 299 U.S. at 117. On this basis alone, *Mescalero Apache Tribe* is wrongly decided. Even if it remained good law, it would be inapposite because the Tribes do not allege trespass or any cause of action to enforce a possessory right. The case is not instructive.

Four years later in *Pueblo of Isleta*, the Tenth Circuit followed *Mescalero Apache Tribe* and held that the district court had jurisdiction pursuant to 28 U.S.C. § 1362 over the Pueblo's action for injury to property caused by blasting operations carried out beyond the Pueblo's boundaries. *See Pueblo of Isleta*, 570 F.2d at 302. The court characterized the Tribe's claim as "a trespass action," but as in *Mescalero Apache Tribe*, it did not conduct a jurisdictional analysis that would be proper today. *See Pueblo of Isleta*, 570 F.2d at 302. Instead, it erroneously suggested that the Tribe could invoke § 1362 as if it creates a federal cause of action, *see id.* (stating that the Tribe is "entitled to be protected in federal court under 28 U.S.C. § 1362"), which it does not, *see Henningson*, 626 F.2d at 714. And as in *Mescalero Apache Tribe*, there was no controversy about the Pueblo's aboriginal title to lands. Thus, *Pueblo of Isleta*, like *Mescalero Apache Tribe*, is no longer good law and would not be instructive here even if it were.

Returning to the present Notices of Removal, the *County of Mono* case on which Defendants heavily rely rests on shaky ground to say the least—dicta from two outdated Ninth Circuit opinions and two Tenth Circuit decisions that do not comport with contemporary federal-question jurisprudence. In the end, *County of Mono* makes the same fatal mistake the Tenth Circuit did: it assumes that federal-question jurisdiction exists under *Oneida I* even when an Indian tribe's aboriginal title to land is not in controversy. In short, it is wrongly decided. And again, because the Tribes do not assert trespass claims, *County of Mono* and the key decisions on which it relies provide no guidance here.

### 2.    *Milner*, *Swinomish*, and *Cranford* Do Not Support Jurisdiction.

Defendants cite two other Ninth Circuit decisions for their argument that federal-question jurisdiction exists because the Tribes' claims involve harm to their lands and resources. *See*

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

23

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

Makah NOR ¶¶ 15–16 at p. 7–8 (citing *United States v. Milner*, 583 F.3d 1174 (9th Cir. 2009); *Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142 (9th Cir. 2020)); SBIT NOR ¶¶ 15–16 at p. 7–8 (same). Neither case supports Defendants.

*Milner* did not analyze subject-matter jurisdiction at all, which does not appear to have been in dispute. There, the United States brought common-law and statutory claims alleging that pursuant to an 1873 executive order, it held "tidelands in trust for the Lummi Nation" superior to the rights of individual defendants with competing claims. *Milner*, 583 F.3d at 1180–81. The court stated in relevant part that "[t]he district court had jurisdiction over the trespass claims under 28 U.S.C. § 1345." *Id.* at 1182. That statute confers upon district courts original jurisdiction over "all civil actions, suits or proceedings commenced by the United States," without regard to the action's subject matter. *See* 28 U.S.C. § 1345. Even if the United States had not been the plaintiff, moreover, *Milner* did involve a controversy over the Lummi Nation's federal law possessory right to the lands—the meaning of the executive order placing the land in trust for the Nation—which might have independently supported jurisdiction. *See id.* at 1183–86. None of that is true here.

In *Swinomish*, a tribe sued a railroad in district court for breach of contract, trespass, and injunctive relief, alleging that the railroad had violated a settlement agreement and an easement agreement that resolved an earlier trespass action brought by the United States and the tribe in federal court. *See* 951 F.3d at 1146, 1148–50. Like *Milner*, subject-matter jurisdiction was not in dispute—the only issue on appeal was whether the Interstate Commerce Commission Termination Act preempted the easement agreement. *See id.* at 1146, 1151. In any event, the Ninth Circuit consistently referred to a treaty entered by the tribe, a related body of "treaty-based federal common law," and federal statutes as the "sources of federal law underlying the Easement Agreement." *See id.* at 1153–54, 1156, 1160. Numerous potential grounds for federal-question jurisdiction thus existed, since the plaintiff Tribe's claims required interpretation of multiple federal statutes, a federal settlement agreement, and a treaty.

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

24

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

Defendants also cite the district court's decision in *Gila River Indian Community v. Cranford*, 459 F. Supp. 3d 1246 (D. Ariz. 2020), Makah NOR ¶ 15 at p. 7; SBIT NOR ¶ 15 at p. 7, but that case too does not aid them. That case involved an actual controversy over a substantial federal question, namely the reserved water rights of the Gila River Indian Community ("GRIC") within the Gila River Reservation. The Tribe alleged that upstream defendants were "unlawfully pumping Gila River water in derogation of its rights." 459 F. Supp. 3d at 1249. Those water rights are established by federal law, namely Congress's formation of the Reservation in 1859 and seven subsequent Executive Orders enlarging it. *See id.* at 1248–50, 1253, 1254–55. They thereby "arise under federal law." *See* Cohen § 19.03[1] at 1211 (discussing reserved water rights); *see also id.* 1212 (referring to the "primacy of federal law" governing these rights). The district court explained that "[a] case brought by a tribe to protect its water rights will nearly always require recourse to federal law," and that jurisdiction existed under § 1331 because "only recourse to federal law . . . can fully establish the continued existence of GRIC's rights." *Cranford*, 459 F. Supp. 3d at 1254–55. The Court recognized that § 1362 "is limited to cases 'arising under' federal law," *id.* at 1252, and ultimately applied a *Grable*-like analysis, finding that the GRIC's complaint required resolution of a "substantial" federal question. *See id.* at 1254 (quotations omitted). Because the Tribes claims here do not require recourse to federal law, the same analysis yields the opposite result.

### 3. *Acoma Pueblo* Does Not Comport with the Current State of the Law and Is Distinguishable.

The Defendants rely solely on the 2001 unpublished district court decision in *Acoma Pueblo v. American Tobacco Co.*, 2001 WL 37125252 (D.N.M. Feb. 20, 2001), for their argument that the Tribes' complaints establish federal-question jurisdiction because they claim harm to public health. *Acoma Pueblo* was decided two years before the Supreme Court "br[ought] some order" to federal-question jurisprudence in *Grable*, and *Acoma Pueblo* fell prey to the very confusion *Grable* sought to remedy. *See Gunn*, 568 U.S. at 258.

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

25

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

In *Acoma Pueblo*, the plaintiffs, "several Indian Nations, Pueblos and Bands" (collectively, the "Pueblos") sued tobacco companies to recover funds spent on health services. 2001 WL 37125252, at *1. Like the many lawsuits filed by state and local governments against tobacco companies in the 1990s and early 2000s, the Pueblos claimed they incurred these health care costs because of the tortious conduct of the defendants in promoting consumption of "unreasonably dangerous products," namely cigarettes and chewing tobacco. *Id.* at *1. The Pueblos specifically alleged that they "ha[d] been forced to expend funds provided to [them] under the Indian Health Care Act," and sought to recover those funds. *Id.* at *2. The defendants removed, arguing that "because the primary purpose of [the Pueblos'] suit is recovery of federal funds, [their] rights in the present case turn on an interpretation of federal law." *Id.* Illustrating the challenges district courts faced before *Grable*, the district court struggled with "[t]he most difficult single problem in determining whether federal question jurisdiction exists[:] . . . deciding when the relation of federal law to a case is such that the action may be said to be one 'arising under' that law." *Id.* at *5 (cleaned up). Although the Pueblos had pleaded only state-law claims, the district court noted that the "expenditures allegedly caused by tortious conduct were undertaken by the United States government and were not at any time subject to Plaintiffs' claims or control," such that "the fact of an injury is not readily demonstrable" and could only be resolved by "reference to federal law." *See id.* at * 7.

The decision applied an earlier formulation of what became *Grable* insofar as it recognized removal can be proper where "[t]he source of a plaintiff's right to recover" stems from federal law, such that a "right or immunity created by the Constitution or laws of the United States [] constitute an essential element of the plaintiff's cause of action." *Id.* at *5. At least two of the *Grable* factors are missing, however: that a construction of the IHC Act was (1) "actually disputed" and (2) "substantial." *See Oakland*, 969 F.3d at 904, 906. The district court in *Acoma Pueblo*, without the benefit of *Grable*, which resolved "the most difficult single problem" it grappled with, did not identify any controversy about how the IHC Act operates. Indeed, all that

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

26

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

could be said about the Pueblos' complaint was that it looked like the IHC Act might come into play with respect to subrogation, not that there was any dispute about how such subrogation would work. *See Acoma Pueblo*, 2001 WL 37125252, at *2. Even if construction of the IHC Act were in controversy, there was no indication that the federal law issue was "substantial" under *Grable*. There was no indication that "the interpretation or validity of" the IHC Act was at issue or that any "ruling on" an IHC Act issue would be "both dispositive of the case and . . . controlling in numerous other cases." *See Oakland*, 969 F.3d at 905 (cleaned up). In short, *Acoma Pueblo* is out of step with the current state of the law. *Compare* Report and Recommendation, *Cherokee Nation v. Morris & Dickson, Co.*, 6:23-cv-00237-RAW-DES, Dkt. 24 (E.D. Okla. March 19, 2024) (attached as Ex. A) (granting motion to remand and finding *Grable* not satisfied, rejecting by opioid distributor defendant's argument that the "only potentially viable theory Plaintiff can proceed under [requires] the interpretation and application of" the Federal Controlled Substances Act).

Even if *Acoma Pueblo* had any legal weight, it would not control this case because the Tribes' complaints do not reference any federal law with respect to their claim of public health injuries, and do not allege losses in the form of federal healthcare spending on the Tribes' behalf. They allege Defendants' tortious conduct generally caused "increased costs associated with public health impacts." *See* Makah Compl. ¶ 4.186 at p. 89; SBIT Compl. ¶ 4.186 at p. 89. Unlike in *Acoma Pueblo*, it is pure conjecture on Defendants' part that any federal issue will "necessarily" arise, let alone whether it would be "actually disputed" and "substantial." *Gunn*, 568 U.S. at 258. Defendants' posited "dispute [is] so doubtful and conjectural, so far removed from plain necessity, [that it] is unavailing to extinguish the jurisdiction of the states." *Gully*, 299 U.S. at 177.

## IV.   CONCLUSION

For all of these reasons, the Court should grant the Tribes' motion and remand these cases to the King County Superior Court.

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

27

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500

1
2
3

The undersigned counsel certifies that this memorandum contains 9,997 words, in compliance with the Local Civil Rules and the parties' stipulation entered by the Court on March 19, 2024. *See* Dkt. 60.

Respectfully submitted,

**SHER EDLING LLP**

*/s/ Katie H. Jones*
CORRIE J. YACKULIC, WSBA No. 16063
VICTOR M. SHER (*pro hac vice*)
MATTHEW K. EDLING (*pro hac vice*)
KATIE H. JONES (*pro hac vice*)
MARTIN D. QUIÑONES
Sher Edling LLP
100 Montgomery St., Ste. 1410
San Francisco, CA 94104
Tel:    (628) 231-2500
Fax:   (628) 231-2929
Email: corrie@sheredling.com
           vic@sheredling.com
           matt@sheredling.com
           katie@sheredling.com
           marty@sheredling.com


**DRUMMOND WOODSUM & MACMAHON**
KAIGHN SMITH JR. (*pro hac vice*)
84 Marginal Way, Suite 600
Portland, ME. 04101
Tel:    (207) 253-0559
Email: ksmith@dwmlaw.com

*Attorneys for Plaintiffs*
*Makah Indian Tribe and*
*Shoalwater Bay Indian Tribe*

PLAINTIFFS' CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW; No. 2:24-cv-00158-JNW

28

SHER EDLING LLP
100 MONTGOMERY STREET, SUITE 1410
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (628) 231-2500