THE HONORABLE JAMAL N. WHITEHEAD

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

10  | MAKAH INDIAN TRIBE,
11  |              Plaintiff,
12  |        v.
    |                                          Case No. 2:24-cv-00157-JNW
13  | EXXON MOBIL CORPORATION,              Case No. 2:24-cv-00158-JNW
    | EXXONMOBIL OIL CORPORATION, BP
14  | P.L.C., BP AMERICA INC., CHEVRON     **DEFENDANTS' RESPONSE TO**
    | CORPORATION, CHEVRON U.S.A. INC.,    **PLAINTIFFS' CONSOLIDATED**
15  | SHELL PLC, SHELL OIL COMPANY,        **MOTION TO REMAND**
    | CONOCOPHILLIPS, CONOCOPHILLIPS
16  | COMPANY, PHILLIPS 66, and PHILLIPS 66 **ORAL ARGUMENT REQUESTED**
    | COMPANY,
17  |
    |              Defendants.
18  | _____
19  | SHOALWATER BAY INDIAN TRIBE,
20  |              Plaintiff,
21  |        v.
22  | EXXON MOBIL CORPORATION,
    | EXXONMOBIL OIL CORPORATION, BP
23  | P.L.C., BP AMERICA INC., CHEVRON
    | CORPORATION, CHEVRON U.S.A. INC.,
24  | SHELL PLC, SHELL OIL COMPANY,
    | CONOCOPHILLIPS, CONOCOPHILLIPS
25  | COMPANY, PHILLIPS 66, and PHILLIPS 66
    | COMPANY,
26  |
    |              Defendants.
27  | _____
28

DEFS.' RESP. TO PLAINTIFFS'                          GIBSON, DUNN & CRUTCHER LLP
CONSOL. MOT. TO REMAND                                  333 SOUTH GRAND AVENUE,
No. 2:24-cv-00157-JNW                                 LOS ANGELES, CA 90071-3197
No. 2:24-cv-00158-JNW                                       213.229.7000

1

**TABLE OF CONTENTS**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND .......................................................................................................... 4

III.    LEGAL STANDARD .................................................................................................. 6

IV.     ARGUMENT ............................................................................................................... 7

        A.      This Action Was Properly Removed Under The Doctrine Of Complete
                Preemption. ....................................................................................................... 7

                1.      *Oneida I* Makes Clear That Claims By Indian Tribes Relating To Tribal
                        Lands And Possessory Rights Are Governed By Federal Law........................ 8

                2.      Following *Oneida I*, Courts Have Made Clear That Federal Jurisdiction
                        Exists Over Claims Alleging Damages And Interference With Tribal
                        Lands. .................................................................................................. 9

                3.      *Oneida I* And Its Progeny Make Clear That Claims Alleging Damages
                        To And Interference With Tribal Lands Are Completely Preempted By
                        Federal Law........................................................................................... 12

                4.      Plaintiffs' Claims For Damages To Tribal Lands Fit Squarely Within
                        The *Oneida* Framework And Are Completely Preempted............................. 16

                5.      Plaintiffs Do Not Cite Any Cases Rejecting Federal Jurisdiction Over
                        Claims Like Theirs. ................................................................................ 19

        B.      In The Alternative, Removal Is Proper Under *Grable*................................... 20

                1.      Claims To Protect Federally Derived Rights To Tribal Lands Arise
                        Under Federal Law................................................................................. 21

                2.      Claims To Recoup Health Care Costs Funded By The Federal
                        Government Pursuant To Federal Statute Arise Under Federal Law. ............ 23

V.      CONCLUSION .......................................................................................................... 25

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

i

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

**Cases**

*Acoma Pueblo v. Am. Tobacco Co.*,
  2001 WL 37125252 (D.N.M. Feb. 20, 2001)....................................................3, 23, 24, 25

*All Mission Indian Housing Auth. v. Magante*,
  526 F. Supp. 2d 1112 (S.D. Cal. 2007) ...........................................................................9

*Animal Legal Def. Fund v. Olympic Game Farm, Inc.*,
  1 Wash. 3d 925 (2023) .................................................................................................22

*Begay v. Kerr-McGee Corp.*,
  499 F. Supp. 1317 (D. Ariz. 1980) ...............................................................................12

*Beneficial Nat'l Bank v. Anderson*,
  539 U.S. 1 (2003) ..............................................................................................14, 15, 16

*Boisclair v. Super. Ct.*,
  51 Cal. 3d 1140 (1990) .................................................................................................17

*Carney v. Washington*,
  551 F. Supp. 3d 1042 (W.D. Wash. 2021)....................................................2, 12, 13, 21

*Caterpillar, Inc. v. Williams*,
  482 U.S. 386 (1987) ..........................................................................................2, 7, 13

*Cherokee Nation v. Morris & Dickson, Co.*,
  No. 6:23-cv-00237 (E.D. Okla. Mar. 19, 2024) .........................................................25

*Coeur d'Alene Tribe v. Hawks*,
  933 F.3d 1052 (9th Cir. 2019)...........................................................................13, 21, 22

*County of Mono v. Liberty Utils. Calpeco Electric, LLC*,
  2021 WL 3185478 (C.D. Cal. May 6, 2021) ..............................................2, 9, 17, 18, 20

*Doe v. U.S. Dep't of Justice*,
  650 F. Supp. 3d 957 (C.D. Cal. 2023)...........................................................................14

*Eagle Bear, Inc. v. Indep. Bank*,
  2023 WL 8529145 (D. Mont. Dec. 8, 2023) .................................................................18

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
  545 U.S. 546 (2005) .......................................................................................................7

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*,
  463 U.S. 1 (1983) .........................................................................................................13

*Gila River Indian Cmty. v. Cranford*,
  459 F. Supp. 3d 1246 (D. Ariz. 2020)..........................................................1, 12, 21, 22, 23

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

ii

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

*Gila River Indian Cmty. v. Henningson, Durham & Richardson*,
   626 F.2d 708 (9th Cir. 1980)..................................................................................1, 11, 12, 19

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005) ...........................................................................................7, 21, 24

*Cnty. of San Mateo v. Chevron Corp.*,
   32 F.4th 733 (9th Cir. 2022)...............................................................................................7

*H-Quotient, Inc. v. Knight Trading Grp., Inc.*,
   2005 WL 323750 (S.D.N.Y. Feb. 9, 2005) ..................................................................14

*Holman v. Laulo–Rowe Agency*,
   994 F.2d 666 (9th Cir. 1993)........................................................................................7, 13

*K2 Am. Corp. v. Roland Oil & Gas, LLC*,
   653 F.3d 1024 (9th Cir. 2011)...............................................................................2, 13, 15, 16

*Legg v. Wyeth*,
   428 F.3d 1317 (11th Cir. 2005)........................................................................................6

*Pueblo of Isleta ex rel. Lucero v. Universal Constructors, Inc.*,
   570 F.2d 300 (10th Cir. 1978)...................................................................................10, 19

*Mescalero Apache Tribe v. Burgett Floral Co.*,
   503 F.2d 336 (10th Cir. 1974)...................................................................................9, 10, 20

*Morales v. Union Pac. R.R. Co.*,
   2005 WL 8160466 (D. Kan. July 16, 2005) ..............................................................14

*Musladin v. Lamarque*,
   555 F.3d 830 (9th Cir. 2009)........................................................................................14

*Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*,
   471 U.S. 845 (1985) .....................................................................................................16

*Nez Perce Tribe v. Idaho Power Co.*,
   847 F. Supp. 791 (D. Idaho 1994)...............................................................................22

*Nicodemus v. Union Pac. Corp.*,
   440 F.3d 1227 (10th Cir. 2006)....................................................................................25

*Oneida Cnty. v. Oneida Indian Nation of N.Y. State*,
   470 U.S. 226 (1985) ...........................................................................................1, 8, 9, 19

*Oneida Indian Nation of N.Y. State v. Oneida Cnty.*,
   414 U.S. 661 (1974) ...........................................................................1, 8, 9, 10, 13, 15

*Owens Valley Indian Housing Auth. v. Turner*,
   185 F.3d 1029 (9th Cir. 1999)............................................................................9, 11, 17, 19, 20

*Round Valley Indian Housing Auth. v. Hunter*,
   907 F. Supp. 1343 (N.D. Cal. 1995) ...........................................................................12

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

iii

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

*Saale Family L.P. v. Spire STL Pipeline LLC*,
    425 F. Supp. 3d 1082 (E.D. Mo. 2019) .........................................................................13

*Skokomish Indian Tribe v. United States*,
    410 F.3d 506 (9th Cir. 2005) ......................................................................................22

*Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*,
    951 F.3d 1142 (9th Cir. 2020) ................................................................................1, 12

*United States v. Santa Fe Pac. R. Co.*,
    314 U.S. 339 (1941) .......................................................................................................9

*White Mountain Apache Tribe v. Bracker*,
    448 U.S. 136 (1980) .....................................................................................................16

*White v. Califano*,
    581 F.2d 697 (8th Cir. 1978) .......................................................................................23

**Statutes**

28 U.S.C. § 1331 ..............................................................................................................6, 8

28 U.S.C. § 1362 ..............................................................................................................6, 8

28 U.S.C. § 1441(a) ............................................................................................................6

**Other Authorities**

Bureau of Indian Affairs Tract Viewer, https://biamaps.geoplatform.gov/biatracts/ ...........................4

Treaty of Neah Bay, 12 Stat. 939 (1855) .............................................................................6

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

iv

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

1    **I.    INTRODUCTION**

2          In these two cases, Plaintiffs—two Indian tribes—pursue a novel and expansive theory in an

3    attempt to impose liability for global climate change on a select group of energy companies.  Plaintiffs

4    allege that, because of Defendants' purported conduct, Plaintiffs face "existential threats" to their tribal

5    land, tribal property interests, tribal natural resources, and tribal citizens.  Makah Compl. ¶ 1.7;

6    Shoalwater Bay Compl. ¶ 1.7.  But, as a series of court decisions over several decades has recognized,

7    such claims brought by Indian tribes are governed by federal law and subject to removal to federal

8    court.  Accordingly, Plaintiffs' Consolidated Motion to Remand should be denied.[1]

9          Plaintiffs acknowledge what makes these cases different from other recent climate change

10   cases:  Plaintiffs here "are federally recognized Indian tribes *whose complaints allege injuries to tribal*

11   *lands*."  Mot. at 1 (emphasis added).  But Plaintiffs err in dismissing this distinction as "immaterial."

12   *Id.* at 4.  To the contrary, the status of the Plaintiffs as Indian tribes, combined with the fact that they

13   are alleging damages to tribal reservation land, trust land, and property interests, means federal

14   jurisdiction exists.  The Supreme Court, Ninth Circuit, district courts in the Ninth Circuit, and courts

15   across the Country have made this clear:  When Indian tribes bring claims seeking damages for alleged

16   injuries to tribal lands and property interests—which Plaintiffs repeatedly admit they do here—those

17   claims are exclusively governed, and completely preempted, by federal law.

18         In *Oneida Indian Nation of New York State v. Oneida County*, 414 U.S. 661 (1974) ("*Oneida*

19   *I*"), the Supreme Court affirmed that Indian tribes "have a federal common-law right to sue to enforce

20   their aboriginal land rights."  *Oneida Cnty. v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 235

21   (1985) ("*Oneida II*").  Decisions of the Ninth Circuit, as well as district courts within the Circuit, have

22   applied this principle to suits, like Plaintiffs' here, for: "damages to Indian land," *Gila River Indian*

23   *Cmty. v. Henningson, Durham & Richardson*, 626 F.2d 708, 714 (9th Cir. 1980), to "protect [tribes']

24   possessory interests in their lands," *Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142,

25   1153 (9th Cir. 2020), and to vindicate other "tribal property rights," *Gila River Indian Cmty. v.*

26   _____

27   [1]    In filing this brief, Defendants do not waive, and expressly preserve, any right, defense, affirmative
         defense, or objection, including, without limitation, lack of personal jurisdiction.

28   DEFS.' RESP. TO PLAINTIFFS'                                    GIBSON, DUNN & CRUTCHER LLP
     CONSOL. MOT. TO REMAND                    1                   333 SOUTH GRAND AVENUE,
     No. 2:24-cv-00157-JNW                                         LOS ANGELES, CA 90071-3197
     No. 2:24-cv-00158-JNW                                         213.229.7000

*Cranford*, 459 F. Supp. 3d 1246, 1255 n.13 (D. Ariz. 2020).  These precedents—to which Plaintiffs offer no meaningful response—establish that federal law governs claims brought by Indian tribes seeking damages for alleged injuries to Indian land and tribal property rights.  That is what the Complaints allege here.

Importantly, under the doctrine of complete preemption, claims like Plaintiffs' asserting injury to tribal lands arise under federal law—even if nominally pleaded under state law—and thus are subject to removal.  Both the Supreme Court and the Ninth Circuit have characterized *Oneida I* as embodying the doctrine of complete preemption.  *See, e.g.*, *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 396 n.8 (1987); *K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1030 (9th Cir. 2011).  In fact, just three years ago, this Court endorsed this same complete preemption framework, holding that "[t]he federal interests in providing a federal forum to determine an Indian Tribe's rights to lands . . . are sufficiently strong to convert a state-law claim into a federal one for the purposes of jurisdiction." *Carney v. Washington*, 551 F. Supp. 3d 1042, 1052 (W.D. Wash. 2021).

A recent case from the Central District of California, *County of Mono v. Liberty Utilities Calpeco Electric, LLC*, 2021 WL 3185478 (C.D. Cal. May 6, 2021), is directly on point.  In that case, the plaintiffs, including an Indian tribe, sued the defendants in state court for damages to tribal lands caused by a wildfire, and the defendants removed the case to federal court.  *Id.* at *1.  In denying remand, the court held that federal removal jurisdiction was proper, because the complaint sought "damages from [d]efendants to tribal land caused by [d]efendants," and thus the "Indian right of possession" was at stake.  *Id.* at *4–5.  The court explained that the defendants "properly removed the case to federal court because the Complaint seeks damages for trespass upon and injury to tribal trust lands," and that the court "ha[d] federal question jurisdiction over actions such as this one, in which a Native American tribe seeks damages for trespass or injury to tribal land from a non-Indian person." *Id.*  This is because, the court explained, such claims were "completely pre-empted and arise[] under federal law."  *Id.* at *3 (cleaned up).

So, too, here.  Plaintiffs are Indian tribes whose reservations consist of lands held in trust by the United States for the tribes.  Makah Compl. ¶ 2.1; Shoalwater Bay Compl. ¶ 2.1.  They expressly

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

2

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

seek damages for "existential threats to [their] people and [their] land," Makah Compl. ¶ 1.7, Shoalwater Bay Compl. ¶ 1.7, and for "injuries to tribal lands," Mot. at 1, tribal property interests, and tribal natural resources, alleging the "destruction of Tribal natural resources, including forest lands and coastal resources," Makah Compl. ¶ 4.186. Accordingly, Plaintiffs are suing to vindicate their rights and interests in tribal lands and for damages to tribal lands—rendering their claims governed by federal law, completely preempted, and subject to removal.

In addition, Plaintiffs "allege . . . harm to public health," Mot. at 1, and increased costs derived from the asserted health consequences of climate change, Makah Compl. ¶ 4.186; Shoalwater Bay Compl. ¶ 4.186. These allegations provide an independent basis for federal jurisdiction. Because health care for tribal members is funded by the federal government pursuant to a comprehensive federal regime, claims for the recovery of such health care costs "necessarily turn[]" on federal law. *Acoma Pueblo v. Am. Tobacco Co.*, 2001 WL 37125252, at *7 (D.N.M. Feb. 20, 2001) (denying remand in tribal action seeking recovery of health care costs under putative state-law claims).

In the face of this unbroken case law from the Supreme Court, Ninth Circuit, and district courts within the Ninth Circuit, Plaintiffs do not cite a *single case* rejecting federal jurisdiction under circumstances comparable to those presented here. The cases Plaintiffs *do* cite are distinguishable, because *none* involved tribal claims for damages to tribal lands. Plaintiffs note that the Ninth Circuit has affirmed remand in other climate cases, but this is irrelevant because Plaintiffs concede none of these cases involved the ground for removal Defendants invoke here. *See* Mot. at 1, 4. And Plaintiffs accuse Defendants of claiming federal jurisdiction based on the "mere presence of an Indian tribe plaintiff." Mot. at 4. But this is incorrect; Defendants did not remove simply because Plaintiffs are tribes, but because they bring suit for alleged damages to tribal lands, title to which is owned by the United States and held in trust for the tribes, and other tribal property interests. Unable to provide any authority to support remand, Plaintiffs attempt to dismiss the array of case law supporting removal as variously "confus[ed]," "wrongly decided," "erroneous[]," or "better understood" to mean the opposite of what it says. *Id.* at 8, 15, 19, 23. Plaintiffs are unable to point to *any opinion* holding that the cases Defendants rely on were wrongly decided, as Plaintiffs erroneously contend, or adopting the

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

3

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

construction Plaintiffs urge.  In fact, Plaintiffs do not, and cannot, point to a single case granting remand where an Indian tribe plaintiff brought claims seeking damages for injuries to tribal lands.  Plaintiffs' Motion should be denied.

## II.     BACKGROUND

Plaintiffs are two federally recognized Indian tribes located in Washington state.  The Makah Indian Tribe is a "federally-recognized sovereign Native Nation that has occupied the lands . . . of what is now the most northwestern portion of the State of Washington for millennia."  Makah Compl. ¶ 2.1. The Shoalwater Bay Indian Tribe is a "federally-recognized sovereign Native Nation that has occupied the lands and waters along and draining into the Willapa Bay . . . in what is now the State of Washington for millennia."  Shoalwater Bay Compl. ¶ 2.1.  The Makah Reservation was created by the Treaty of Neah Bay of 1855, Makah Compl. ¶ 2.1, while the Shoalwater Bay reservation was created by an executive order in 1866, Shoalwater Bay Compl. ¶ 2.1.  Indeed, nearly all of the Makah Reservation and large portions of the Shoalwater Bay Reservation are owned by the United States and held in trust for the benefit of the respective tribes.  *See* Bureau of Indian Affairs Tract Viewer, https://biamaps.geoplatform.gov/biatracts/.  Both Plaintiffs' tribal lands include "lands that the United States holds in trust for the Tribe."  Makah Compl. ¶ 2.1; Shoalwater Bay Compl. ¶ 2.1.  Neither Plaintiff disputes that it is suing for alleged harm to tribal reservation land and trust land.  To the contrary, Plaintiffs repeatedly concede that their complaints "allege injuries to tribal lands."  Mot. at 1.

Both Plaintiffs bring suit because their "aboriginal homelands on the Olympic Peninsula" are allegedly under "existential threats … from climate change," Makah Compl. ¶ 1.7; Shoalwater Bay Compl. ¶ 1.7, and "faced with the consequences of the climate crisis."  Mot. at 2.  Plaintiffs' novel theory of relief is that Defendants engaged in an alleged campaign of "disinformation" that has increased demand for, and the production, combustion, and use of, oil and gas.  Makah Compl. ¶¶ 1.1, 1.4, 1.6; Shoalwater Bay Compl. ¶¶ 1.1, 1.4, 1.6.  Plaintiffs allege this increased consumption, in turn, has "driven up greenhouse gas emissions" and "accelerated global warming," bringing about "climate change impacts" to Plaintiffs and their reservations.  Makah Compl. ¶ 1.1; Shoalwater Bay Compl. ¶ 1.1.  Based on these theories, Plaintiffs assert claims against Defendants for public nuisance and

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

4

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

failure to warn, nominally brought under Washington state law.   Makah Compl. ¶¶ 5.1–5.15; Shoalwater Bay Compl. ¶¶ 5.1–5.15.

Both Plaintiffs allege that the effects of climate change, purportedly because of Defendants' actions, are damaging and, indeed, threatening to destroy, their federally protected tribal lands and natural resources.  Indeed, this is the heart of Plaintiffs' claimed injuries.  For example:

- As a result of climate impacts, Plaintiffs allegedly "face[] existential threats to [their] people and [their] *land*."  Makah Compl. ¶ 1.7 (emphasis added); Shoalwater Bay Compl. ¶ 1.7 (emphasis added).

- These alleged climate impacts to Plaintiffs' reservations include rising sea levels and increased rainfall, extreme heat, wildfire, and drought.  Makah Compl. ¶¶ 1.7, 4.184, 4.187; Shoalwater Bay Compl. ¶¶ 1.7, 4.184, 4.187.

- "[S]ignificant and accelerating sea-level rise," and an increase in the "mean sea level" of the tribal reservations, allegedly threatening "residents" and "essential governmental infrastructure," as well as "more extreme weather events" on the tribal reservations, "more destructive wildfires," and a "loss of habitat and species." Makah Compl. ¶¶ 4.184, 4.187; Shoalwater Bay Compl. ¶¶ 4.184, 4.187.

- Plaintiffs' alleged injuries include "destruction of Tribal natural resources"— including, for the Makah Indian Tribe, "forest lands and coastal resources"— "destruction of Tribal-owned or -operated facilities and property," and "increased costs."  Makah Compl. ¶ 4.186; Shoalwater Bay Compl. ¶ 4.186.

- The Makah Indian Tribe alleges damages to "[t]he Tribe's expansive forests, an important economic resource for the Tribe."  Makah Compl. ¶ 4.187.

- Plaintiffs allege that, because of sea-level rise, lower-lying lands are unsafe for occupancy and tribal members must "relocat[e] . . . to higher ground."  Makah Compl. ¶ 4.188; Shoalwater Bay Compl. ¶ 4.188.

- Plaintiffs seek "recover[y] for injuries to [their] natural resources, property, and public health."  Makah Compl. ¶ 2.1; Shoalwater Bay Compl. ¶ 2.1.

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

5

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

- Plaintiffs seek abatement funds to "remediate and adapt" their reservations' "lands" and "natural resources." Makah Compl. ¶ 6.2; Shoalwater Bay Compl. ¶ 6.2.

In the case of the Makah Indian Tribe, whose reservation was created by treaty, Plaintiff's claims also necessarily implicate its treaty rights. Specifically, the Treaty of Neah Bay between the Makah Indian Tribe and the United States not only "reserved" certain lands "for the present use and occupation" of Plaintiff, but also granted Plaintiff "[t]he right of taking fish and of whaling or sealing" as well as "the privilege of hunting and gathering roots and berries on open and unclaimed lands." Treaty of Neah Bay arts. II, IV, 12 Stat. 939 (1855), Makah NOR Dick Decl., Ex. 3; *see also* Makah Compl. ¶ 2.1. The Makah Indian Tribe's claims allege damages to these federally protected tribal lands and natural resources, including "forest lands and coastal resources," thereby compromising the rights provided to them under treaty. Makah Compl. ¶ 4.186; *see also id.* ¶ 4.187 (alleging "threat[s]" to "aquatic life" and "the Tribe's coastal ecosystems and economy").

In addition, Plaintiffs allege that global climate change increases "the incidence of serious health risks like respiratory distress, cancer, chronic obstructive pulmonary disease ('COPD'), and cardiovascular disease among" tribal citizens. Makah Compl. ¶ 4.187; Shoalwater Bay Compl. ¶ 4.187. And Plaintiffs claim damages arising out of harms to "public health," Makah Compl. ¶¶ 2.1, 4.1, 4.111, 4.119, 4.186, 5.4, 5.15; Shoalwater Bay Compl. ¶¶ 2.1, 4.1, 4.111, 4.119, 4.186, 5.4, 5.15, and to "assets essential to community health," Makah Compl. ¶ 4.186; Shoalwater Bay Compl. ¶ 4.186, as well as "increased costs associated with public health impacts," Makah Compl. ¶ 4.186; Shoalwater Bay Compl. ¶ 4.186.

## III.    LEGAL STANDARD

Removal is proper if the federal court would have had original jurisdiction of the action. 28 U.S.C. § 1441(a). Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal district courts also "have original jurisdiction of all civil actions, brought by any Indian tribe . . . wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1362. "The removal process was created by Congress to protect defendants." *Legg v. Wyeth*, 428 F.3d 1317,

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND                                   6
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

1325 (11th Cir. 2005). To justify removal, the removing party need only show that there is federal jurisdiction over a single claim. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559, 563 (2005).

There are multiple circumstances in which federal courts are vested with subject matter jurisdiction over claims purportedly pleaded under state law.

The "complete preemption" doctrine "applies in select cases where the preemptive force of federal law is so 'extraordinary' that it converts state common law claims into claims arising under federal law for purposes of jurisdiction." *Holman v. Laulo–Rowe Agency*, 994 F.2d 666, 668 (9th Cir. 1993). "Once an area of state law has been completely preempted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

Courts are also vested with federal question jurisdiction over claims pleaded under state law that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Applying the *Grable* test "calls for a common-sense accommodation of judgment to [the] kaleidoscopic situations that present a federal issue." *Id.* at 313 (internal quotation marks omitted) (alteration in original).

## IV. ARGUMENT

### A. This Action Was Properly Removed Under The Doctrine Of Complete Preemption.

Although Plaintiffs purport to plead state-law claims, removal is proper under the well-pleaded complaint rule when, as here, the doctrine of complete preemption applies, or when, as here, the claims arise under federal law under *Grable*. *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746 (9th Cir. 2022). Federal case law makes clear that claims brought by Indian tribes relating to their possessory rights or alleging damages to their federally protected tribal lands and resources are completely preempted, and are also removable under *Grable*. Plaintiffs' attempts to critique or distinguish this

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

7

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

body of case law are unpersuasive. Plaintiffs' claims fall squarely within this framework and are therefore subject to removal.

### 1. *Oneida I* Makes Clear That Claims By Indian Tribes Relating To Tribal Lands And Possessory Rights Are Governed By Federal Law.

The doctrine that claims by Indian tribes relating to tribal lands and possessory rights are governed, and completely preempted, by federal law, was first articulated in the Supreme Court's decision in *Oneida I* in 1974. *Oneida I* concerned a lawsuit brought by two Indian tribes under federal question (28 U.S.C. § 1331) and tribal (28 U.S.C. § 1362) jurisdiction, alleging that roughly five million acres of tribal land had been ceded to New York State in the late eighteenth century in defiance of treaties between the tribes and the United States "confirming the Indians' right to possession of their lands" and forbidding the conveyance of those lands without the consent of the United States. 414 U.S. at 664. The district court dismissed the case for lack of subject matter jurisdiction, and the court of appeals affirmed. *Id.* at 665.

The Supreme Court reversed. Emphasizing that "federal law and federal courts must be deemed the controlling considerations in dealing with the Indians," the Court held that "the complaint asserted a current right to possession conferred by federal law, wholly independent of state law." *Id.* at 666, 678. As the Court explained, the "possessory rights of Indian tribes to their aboriginal lands" that the suit sought to vindicate were "federal right[s]" protected by, and arising under, "the Constitution, laws, or treaties of the United States." *Id.* at 667, 672. "With the adoption of the Constitution, Indian relations became the exclusive province of federal law," and Indian tribes' rights to their tribal lands arose under federal law. *Oneida II*, 470 U.S. at 234–36. Moreover, the Court recognized that, because tribal land rights are creatures of federal law reflecting the United States' trust responsibility to Indians, federal law must provide the "governing rule of decision" and "'state law cannot be invoked.'" *Oneida I*, 414 U.S. at 674 (internal citations omitted).

This doctrine had well-developed foundations. "Numerous decisions of [the Supreme] Court prior to *Oneida I* recognized at least implicitly that Indians have a federal common-law right to sue to enforce their aboriginal land rights." *Oneida II*, 470 U.S. at 235. Several decades prior, the Supreme Court had "held that Indians have a common-law right of action for an accounting of 'all rents, issues,

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

8

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

1    and profits' against trespassers on their land." *Id.* at 235–36 (quoting *United States v. Santa Fe Pac.*

2    *R. Co.*, 314 U.S. 339, 344 (1941)).

3    **2.    Following *Oneida I*, Courts Have Made Clear That Federal Jurisdiction Exists Over Claims Alleging Damages And Interference With Tribal Lands.**

4        The doctrine articulated in *Oneida I* has subsequently been developed and applied by the Ninth

5    Circuit, its sister circuits, and the district courts.  This body of case law makes clear that the Supreme

6    Court's holding that federal law governs Indian tribes' ability to "vindicate" their tribal land rights,

7    *Oneida II*, 470 U.S. at 235–36, embraces not merely actions to "establish aboriginal title," as Plaintiffs

8    contend, Mot. at 15, but a broader category of actions relating to damages or other interference with

9    tribal lands and similar property interests.

10        Two cases from the Tenth Circuit decided soon after *Oneida I*, which have been cited favorably

11    in the Ninth Circuit, confirm this understanding.  *See, e.g.*, *Owens Valley Indian Housing Auth. v.*

12    *Turner*, 185 F.3d 1029, 1033 n.4 (9th Cir. 1999), *opinion withdrawn as moot*, 192 F.3d 1330 (9th Cir.

13    1999); *County of Mono*, 2021 WL 3185478, at *3.[2]  The first is *Mescalero Apache Tribe v. Burgett*

14    *Floral Co.*, 503 F.2d 336 (10th Cir. 1974).  In *Mescalero Apache Tribe*, an Indian tribe sued for dam-

15    ages after "local companies and an individual engaged in arborculture" entered the tribe's reservation

16    "without permission and destroyed trees thereon, causing damage" to the tribe.  *Id.* at 337.  The district

17    court dismissed for lack of federal jurisdiction, but the Tenth Circuit reversed.  The defendants in

18    *Mescalero Apache Tribe* argued that, unlike in *Oneida I*, "the Indians [had] possession of their reser-

19    vation and their title [was] clear and undisputed"; the tribe merely sought "compensation for damages

20    allegedly suffered by actions committed against their possessory interests."  *Id.* at 338.  But the Tenth

21    Circuit rejected this distinction and held that the tribe's claims, like those in *Oneida I*, dealt with "pro-

22    tecting 'possessory rights to tribal lands.'"  *Id.* at 338 (quoting *Oneida I*, 414 U.S. at 677).  The court

---

[2]    The opinion in *Owens Valley* was subsequently withdrawn, and the case dismissed, because the defendant passed away during the course of the appeal.  *See* 192 F.3d 1330; 201 F.3d 444 (9th Cir. 1999).  Thus, *Owens Valley* is not binding precedent.  However, recognizing that there is no indication the Ninth Circuit found fault with its analysis in the original *Owens Valley* opinion, district courts within the Ninth Circuit have repeatedly cited to it as persuasive authority.  *See, e.g.*, *County of Mono*, 2021 WL 3185478, at *1 n.2; *All Mission Indian Housing Auth. v. Magante*, 526 F. Supp. 2d 1112, 1117 (S.D. Cal. 2007).

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

could "see no reason why the present case should merit different treatment than that mandated by the Supreme Court in *Oneida*." *Id.*

The second Tenth Circuit case is *Pueblo of Isleta ex rel. Lucero v. Universal Constructors, Inc.*, 570 F.2d 300 (10th Cir. 1978).  In that case, the Pueblo of Isleta tribe "brought the action to recover damages for injury to property within the boundaries of the Pueblo," which resulted from "blasting operations" by the defendant "carried out beyond the boundaries of the Pueblo."  *Id.* at 300.  The tribe alleged "damages to some 30 private residences on the Pueblo" and "damages to the lands as well as the improvements."  *Id.* at 301.  The district court dismissed for lack of subject matter jurisdiction because "the property rights of the Tribe were not involved," but the Tenth Circuit reversed.  *Id.* at 300.  Citing to *Oneida I* and *Mescalero Apache Tribe*, the Tenth Circuit reasoned that, under *Oneida I*, "federal laws have continuously protected possessory rights to tribal lands," and held that the tribe's claims fell within the *Oneida* framework.  *Id.* at 301–02.  "The damage here, as in the other cases, is to tribal rights," the court held, and "damage to property as a result of concussions should not be distinguished because there has not been a physical invasion."  *Id.* at 302.

*Mescalero Apache Tribe* and *Pueblo of Isleta* both recognized that, under *Oneida*, federal law governs claims by Indian tribes for damages to tribal lands, as part and parcel of the tribes' protection of their possessory rights.  This makes sense as a matter of logic and law because damage to tribal land interferes with and frustrates the Indian tribe's full enjoyment of its possessory rights in that land.  *See, e.g.*, Makah Compl. ¶¶ 1.7, 4.186, 4.187, 4.188; Shoalwater Bay Compl. ¶¶ 1.7, 4.186, 4.187, 4.188 (alleging "existential threats" to tribal lands, including "destruction" of lands and natural resources and sea-level rise, and a need for tribal citizens to "relocate[e] . . . to higher ground"); *see also, e.g.*, *Pueblo of Isleta*, 570 F.2d at 302 (comparing "damage to property" on tribal land to "physical invasion" for *Oneida* purposes).  Critically, as Plaintiffs concede, this case implicates precisely the type of "aboriginal" lands "occupied" by Indian tribes for "millennia" (Makah Compl. ¶ 1.7; Shoalwater Bay Compl. ¶ 1.7) that were at issue in *Oneida I* and *II*, and recognized by the Supreme Court as subject to "Indian title" and tribal "possessory rights."  *Oneida I*, 414 U.S. at 667.  Thus, Plaintiffs cannot reasonably pursue claims, for example, that sea level-rise is threatening to swallow up their federally protected

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

10

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

coastal lands—or that wildfires are destroying their treaty-protected natural resources—while at the same time maintaining that this case in no way implicates their "possessory" rights. Indeed, because Plaintiffs allege that their tribal lands and resources are facing "existential" threats, suffering damage to the point of being destroyed or disappearing altogether, these claims necessarily implicate Plaintiffs' possessory rights.

Subsequent cases in the Ninth Circuit have affirmed this position. For instance, in *Gila River Indian Community v. Henningson, Durham, and Richardson*, a breach of contract suit related to the construction of a building, the Ninth Circuit explained that "[t]he common thread running through" cases like *Oneida I*, *Mescalero Apache Tribe*, and *Pueblo of Isleta* "is that they all involved possessory rights of the tribes to tribal lands." 626 F.2d at 714. Thus, federal jurisdiction existed for suits involving a tribe's "possessory right to the land," or where the tribe "[sought] recovery for *damages to Indian land*." *Id.* (emphasis added). In *Henningson*, the court found that these issues were not present in the plaintiff's "simple breach of contract case," and declined to find federal jurisdiction because the "damages sought were *not* for trespass on the land, for restoration of the land to its original state or for irreparable injury to the land." *Id.* at 715 n.8 (emphases added). If, on the other hand, the damages sought *were* for alleged "injury to the land"—as are the damages Plaintiffs seek here—removal would have been proper.

*Owens Valley*, 185 F.3d 1029, is in accord. In that opinion, the Ninth Circuit explained that, "where a tribe seeks damages from a non-Indian 'for trespass on the land, for restoration of the land to its original state or for irreparable injury to the land,' *federal jurisdiction exists because the Indian right of possession itself is at stake.*" *Id.* at 1033 n.4 (quoting *Henningson*, 626 F.2d at 715 n.8) (emphasis added). The court ultimately declined to find jurisdiction over an unlawful detainer action for eviction brought by a public housing agency chartered by several Indian tribes, on land held by the Bishop Indian Tribe. *Id.* at 1031. Mirroring *Henningson*, the court concluded that a garden-variety "landlord-tenant dispute[]" was not governed by federal law, because it did not involve a claim for damages to tribal land allegedly committed by a non-Indian, which *would have* implicated "the Indian right of possession." *Id.* at 1033 & n.4.

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

11

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

Since these cases, the Ninth Circuit has again affirmed that tribal claims to "protect [tribes'] possessory interests in their lands" are governed by federal law. *Swinomish*, 951 F.3d at 1153. District courts within the Ninth Circuit have done the same. In *Begay v. Kerr-McGee Corp.*, the district court explained that "[t]he rationale in *Oneida* has been extended to include actions brought by Indian tribes for trespass, and to *actions brought by Indian tribes for damage to tribal lands*," because such actions were to "protect the tribe's possessory rights in tribal lands." 499 F. Supp. 1317, 1321 (D. Ariz. 1980) (emphasis added) (rejecting application of *Oneida* to personal injury action brought by individuals on Indian reservation). And in *Round Valley Indian Housing Authority v. Hunter*, the district court affirmed that "[a]n action involving an Indian tribe's . . . possessory rights of trust land would, unquestionably, create a question of federal common law." 907 F. Supp. 1343, 1348 (N.D. Cal. 1995) (emphasis omitted) (holding no federal jurisdiction over landlord-tenant dispute brought by individual tribal member).

More recently, in *Gila River Indian Community v. Cranford*, the district court affirmed that claims "brought by a tribe 'to protect its federally derived property rights'" were subject to federal jurisdiction under 28 U.S.C. §§ 1331 and 1362, noting that "*federal law provides the source and defines the extent of tribal property interests*." 459 F. Supp. 3d at 1252, 1255 n.13 (emphasis added) (quoting *Henningson*, 626 F.2d at 714) (finding federal jurisdiction over suit by Indian tribe to protect water rights). And in *Carney v. Washington*, this Court found federal jurisdiction over a property dispute between a non-Indian landowner, an Indian tribe, and the State of Washington, because the case "rais[ed] for consideration issues that are necessarily federal in nature" and were "governed by federal law." 551 F. Supp. 3d at 1052.

### 3. *Oneida I* And Its Progeny Make Clear That Claims Alleging Damages To And Interference With Tribal Lands Are Completely Preempted By Federal Law.

Not only are actions by Indian tribes for possessory rights and damages to tribal land governed by federal common law, they are also completely preempted by federal law—and, thus, removable—regardless whether Plaintiffs have affixed state or federal law labels to their claims.

a. *Oneida* explained that an action to vindicate tribal land rights necessarily "[arose] under the Constitution, laws, or treaties of the United States," given "the nature and source of the possessory

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

12

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

rights of Indian tribes to their aboriginal lands," which are "conferred by federal law, wholly independ-ent of state law." *Oneida I*, 414 U.S. at 666–67. "Although *Oneida I* did not speak in terms of complete preemption, the [Supreme] Court has since characterized the decision as holding that a 'state-law com-plaint that alleges a present right to possession of Indian tribal lands necessarily asserts a present right to possession under federal law, and is thus *completely pre-empted and arises under federal law*.'" *K2 Am. Corp.*, 653 F.3d at 1030 (quoting *Caterpillar*, 482 U.S. at 393 n.8); *see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 n.25 (1983) (describing *Oneida I* as of "similar effect" to complete preemption).

Subsequent Ninth Circuit case law has cemented this categorization. As stated in *Coeur d'Alene Tribe v. Hawks*: "The Supreme Court later characterized" its holding in *Oneida I* "as 'similar' to complete preemption cases in which the preemptive force of federal law 'is so powerful as to displace entirely any state cause of action.'" 933 F.3d 1052, 1057 (9th Cir. 2019) (quoting *Franchise Tax Bd.*, 463 U.S. at 23 & n.25); *see also, e.g.*, *K2 Am. Corp.*, 653 F.3d at 1030; *Holman v. Laulo-Rowe Agency*, 994 F.2d 666, 668 n.3 (9th Cir. 1993).

Just three years ago, this Court embraced *Oneida I* as an example of complete preemption. *Carney*, 551 F. Supp. 3d at 1051–52. The Court summarized *Oneida* and noted that the Supreme Court "has subsequently referred to its decision in *Oneida* as an example of one of the few areas of federal law where preemption converts a state-law claim into a federal one for the purpose of establishing jurisdiction." *Id.* at 1051. The Court then explained why complete preemption made equal sense in *Carney*, which involved a property dispute relating to tribal land, and which was filed in state court but removed. The plaintiff, by suing the tribe, was "raising for consideration issues that are necessarily federal in nature, in that they are governed by federal law and important to the federal system." *Id.* at 1052. "The federal interests in providing a federal forum to determine an Indian Tribe's rights to lands . . . are sufficiently strong to convert a state-law claim into a federal one for the purposes of jurisdic-tion." *Id.*

Other district courts have likewise recognized that *Oneida* reflects a type of complete preemp-tion. *See, e.g.*, *Saale Family L.P. v. Spire STL Pipeline LLC*, 425 F. Supp. 3d 1082, 1091–92 (E.D.

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

13

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

Mo. 2019) (noting "Native American tribal claims to possession of property" as an "area[] of federal law" for which "the Supreme Court has recognized complete preemption"); *Morales v. Union Pac. R.R. Co.*, 2005 WL 8160466, at *3 n.2 (D. Kan. July 16, 2005) ("The Supreme Court has also found federal treaties with Indian tribes to completely preempt state law with regard to land claims."); *H-Quotient, Inc. v. Knight Trading Grp., Inc.*, 2005 WL 323750, at *3 (S.D.N.Y. Feb. 9, 2005) (recognizing "Indian land grant rights" as a category of cases in which "[t]he Supreme Court has found complete preemption"). In short, the conception of *Oneida* as an example of complete preemption is mandated by binding precedent and should be followed here.

**b.** Plaintiffs argue that *Oneida* is supposedly "better understood" as an example of *Grable* rather than complete preemption. Mot. at 8–16. As explained below, Plaintiffs' claims are subject to removal even under the *Grable* doctrine. So, even if Plaintiffs' argument were correct, it would be of no help to them on the removal question. In any event, the argument that *Oneida* did not apply complete preemption is contrary to directly applicable precedent, unsupported by any case law, and ignores the unique nature of federal Indian law.

First, as shown above, courts have repeatedly characterized *Oneida* as a complete preemption precedent. "The Supreme Court has made clear that the [] courts must follow Supreme Court precedent until the Supreme Court itself declares it no longer binding." *Musladin v. Lamarque*, 555 F.3d 830, 837 (9th Cir. 2009); *Doe v. U.S. Dep't of Justice*, 650 F. Supp. 3d 957, 1003 (C.D. Cal. 2023) ("[I]t is this Court's duty to say what the law is *today*, not to speculate as to how the Supreme Court may rewrite the law tomorrow."). Plaintiffs have provided no authority under which this Court may deviate from well settled law.

Plaintiffs have likewise provided no case law that actually endorses their suggestion that *Oneida* is "better understood" as an example of *Grable* rather than complete preemption. To the contrary, this appears to be largely an "understanding" of Plaintiffs' own invention. The *sole* support cited by Plaintiffs for this proposition is "a footnote within [a] sentence" of *Beneficial National Bank v. Anderson*, 539 U.S. 1, 8 n.4 (2003). In *Beneficial National Bank*, the Supreme Court confirmed that complete preemption applied to causes of action brought under certain sections of the National Bank Act and

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

14

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

described other examples in which it had found complete preemption involving a federal statute. *Id.* at 8–11. Then, in a footnote, the Court wrote:

> This Court has also held that federal courts have subject-matter jurisdiction to hear possessory land claims under state law brought by Indian tribes because of the uniquely federal "nature and source of the possessory rights of Indian tribes." [*Oneida I*, 414 U.S. at 667]. Because that case turned on the special historical relationship between Indian tribes and the Federal Government, it does not assist the present analysis.

*Id.* at 8 n.4.

Plaintiffs erroneously assert that this footnote indicates that the Supreme Court has "backed away" from categorizing *Oneida* as complete preemption. Mot. at 14. But Plaintiffs' assertion makes no sense. By citing *Oneida* in a complete preemption case, the Court acknowledged *Oneida* as an example of complete preemption, premised on "the special historical relationship between Indian tribes and the Federal government." *Beneficial Nat'l Bank*, 539 U.S. at 8 n.4. Because that same unique context was not present in *Beneficial National Bank*, *Oneida* was of no relevance *in that case*. The Court was not "retreating" from viewing *Oneida* as a complete preemption holding—it was merely noting that *Oneida* was another example of complete preemption based on circumstances not at issue in, and therefore not instructive for, *Beneficial National Bank*.

This understanding of *Beneficial National Bank* is consistent with the Ninth Circuit's discussion in *K2 America*, in which an oil and gas company asserted federal jurisdiction on complete preemption grounds for its suit against another oil and gas company related to a lease on land held in trust by the United States for various Indian allottees. 653 F.3d at 1026, 1029–31. As noted, *K2 America* recognized that the Supreme Court has characterized *Oneida* as an example of complete preemption. *Id.* at 1030. *K2 America* then cited the footnote raised by Plaintiffs in *Beneficial National Bank*—not to suggest that *Oneida* was something other than an example of complete preemption—but to *endorse* that categorization, explaining that "*Oneida I*…'turned on the special historical relationship between Indian tribes and the Federal Government.'" *Id.* (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8 n.4).[3]

---

[3]  Likewise, here, this "special historical relationship" is implicated by Plaintiffs' claims alleging an "existential" threat to federally defined and protected tribal rights granted to Plaintiffs by virtue of their historical relationship with the federal government. *See* Makah Compl. ¶¶ 1.7, 2.1; Shoalwater Bay Compl. ¶¶ 1.7, 2.1.

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

15

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

The Ninth Circuit went on to explain why, under this conception of *Oneida*, complete preemption was not appropriate in *K2 America*, because neither party "is an Indian party" and because the plaintiff did not "claim ownership of the Allotment Lease" under federal law. *Id.* at 1030–31. Of course, both factors missing in *K2 America* are present here: Plaintiffs are Indian tribes who claim ownership of their tribal land under federal law, namely a treaty in the case of the Makah Indian Tribe and an executive order in the case of the Shoalwater Bay Indian Tribe. *See* Makah Compl. ¶ 2.1; Shoalwater Bay Compl. ¶2.1.

Plaintiffs rely heavily on case law discussing the importance of a statute or congressional intent for complete preemption. *See* Mot. at 8–9, 14. To be sure, in non-tribal circumstances, the Supreme Court has looked to federal statutes to find complete preemption. But, as the Court has also recognized, Indian tribes occupy a "unique status" under federal law, *Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 851 (1985), including because of the "unique historical origins of tribal sovereignty." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143 (1980). Because the "form and nature of [tribal] sovereignty," and tribes' relationship with the federal government, are unique in our political system, it is "generally unhelpful" and "treacherous" to apply to federal Indian law "those standards of pre-emption that have emerged in other areas of the law." *Id. Beneficial National Bank* further affirms that complete preemption under *Oneida* is based on "the special historical relationship between Indian tribes and the Federal Government" and is not subject to the same considerations that govern complete preemption in other contexts. 539 U.S. at 8 n.4. Thus, it is not surprising or persuasive that the underpinnings of complete preemption in this context may look different from other contexts.

### 4.    Plaintiffs' Claims For Damages To Tribal Lands Fit Squarely Within The *Oneida* Framework And Are Completely Preempted.

Where, as here, an Indian tribe brings an action for alleged damages to tribal lands and natural resources, federal jurisdiction exists and removal is proper.

*County of Mono* is instructive. There, the Central District of California found removal was appropriate under circumstances strikingly similar to those presented here, and the court affirmed both that claims such as Plaintiffs' are governed by federal law, and that they are subject to complete

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

16

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

preemption.  In *County of Mono*, plaintiffs, including an Indian tribe, sued the defendants in California state court for damages to tribal lands—including the destruction of "nearly 100 structures"—caused by a wildfire, alleging inverse condemnation, negligence, nuisance, premises liability, trespass, and California statutory claims.  2021 WL 3185478, at *1.  Defendants removed, arguing plaintiffs' claims arose under federal law and were completely preempted because they alleged a present right to possession of Indian tribal lands.  *Id.* at *1, *3.  Plaintiffs moved to remand, asserting they did "not seek redress over the actual disposition of the tribal trust lands," but instead merely sought "to recover for damages to the land."  *Id.* at *3.

The court rejected plaintiffs' motion, and emphatically affirmed federal subject matter jurisdiction following a careful survey of much of the authority discussed above.  "Where a tribe seeks damages from a non-Indian 'for trespass on [tribal] land, for restoration of the land to its original state *or for irreparable injury to the land*,'" the court explained, "federal jurisdiction exists because the Indian right of possession itself is at stake."  *Id.* at *3–4 (emphasis added) (quoting *Owens Valley*, 185 F.3d at 1033 n.4).  Thus, defendants had "properly removed the case to federal court because the Complaint seeks damages for trespass upon and injury to tribal trust lands."  *Id.* at *4.  The court "ha[d] federal question jurisdiction over actions such as this one, in which a Native American tribe seeks damages for trespass or injury to tribal land from a non-Indian person."  *Id.* at *5.  Such a claim was "completely pre-empted and arises under federal law."  *Id.* at *3 (cleaned up).

Plaintiffs' Complaints raise precisely the same federal question at issue in *County of Mono*.  Plaintiffs bring claims for damages to tribal land because of natural impacts to which Defendants allegedly contributed.  *See, e.g.*, Makah Compl. ¶¶ 1.7, 4.8, 4.184, 4.187, 5.12 (all mentioning wildfires); Shoalwater Compl. ¶¶ 1.7, 4.8, 4.184, 4.187, 5.12 (same); Makah Compl. ¶ 2.1 (defining the "Makah Reservation" to include the Makah Tribe's treaty reservation, "together with lands that the United States holds in trust for the Tribe near and contiguous to the Tribe's treaty reservation"); Shoalwater Compl. ¶ 2.1 (defining the "Shoalwater Bay Reservation" to include the Shoalwater Bay Tribe's Executive Order Reservation, "together with lands that the United States holds in trust for the Tribe near and contiguous to the Tribe's Executive Order Reservation"); *see also Boisclair v. Super. Ct.*, 51 Cal.

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

17

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

3d 1140, 1148 (1990) (explaining that "[m]ost," but not all, "Indian lands are owned by the United States and held in trust for the benefit of Indians"); *Eagle Bear, Inc. v. Indep. Bank*, 2023 WL 8529145, at \*2 (D. Mont. Dec. 8, 2023) ("Though a particular tribe or tribes governs reservation lands, the federal government holds title to the land in trust on their behalf."). Specifically, the Complaints seek "compensatory damages," as well as an abatement fund to "remediate" Plaintiffs' "Reservation lands [and] natural resources," to remedy the alleged "existential threats" to the tribes' "people" and "land" including the "destruction of Tribal natural resources, including forest lands and coastal resources," and interference with Plaintiffs' right to occupy and "enjoy . . . [their] property." *See, e.g.*, Makah Compl. ¶¶ 1.7, 4.186, 5.4, 6.2, 6.3. Plaintiffs seek these money damages and abatement fund payments precisely so they can "remediate" their lands and continue to possess them. *See, e.g.*, Makah Compl. ¶¶ 4.187, 4.188; Shoalwater Bay Compl. ¶¶ 4.187, 4.188; Mot. at 2. Accordingly, the "Indian right of possession" is at stake, federal question jurisdiction exists, and removal is proper. *Cnty. of Mono*, 2021 WL 3185478, at \*4–5.[4]

Thus, *County of Mono* provides clear persuasive authority as to Plaintiffs' claims. Plaintiffs contend that *County of Mono* was "likely wrongly decided." Mot. at 19. But their principal argument for this is that the decision "rests on shaky ground"—namely, the case law discussed above. *Id.* at 23. As explained, *see infra* at 19–20, Plaintiffs' disagreements with that case law miss the mark. Nor do Plaintiffs cite any case that refers to *County of Mono* as wrongly decided or reached a different outcome under comparable circumstances. Instead, they ask the Court to hold that all the courts to examine this issue got it wrong. Plaintiffs also refer to *County of Mono* as "factually distinguishable," Mot. at 19, but never explain how exactly its facts differ. The most Plaintiffs suggest is that here they do not bring a trespass claim. *See id.* at 23. However, there is nothing to indicate that the presence or absence of a trespass cause of action is dispositive under *Oneida*. *See infra* at 19. In any case, *County of Mono* is quite explicit that federal jurisdiction is proper when an Indian tribe "seeks damages for trespass *or injury to tribal land*." 2021 WL 3185478, at \*5 (emphasis added); *see also id.* at \*4 (noting "tribes

---

[4]   Federal jurisdiction is further confirmed by the fact that Plaintiff Makah Indian Tribe's claims implicate Plaintiff's treaty rights. *See infra* at 22.

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

18

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

seek compensation for damages to tribal land caused by trespass *or other wrongful acts*") (emphasis added).  Here, it is evident from the face of Plaintiffs' Complaints that they seek, among other things, "damages for . . . injury to tribal land."  *See* Makah Compl. ¶¶ 4.184–88 (alleging damages to tribal lands and natural resources); Shoalwater Compl. ¶¶ 4.184–88 (same).

### 5.    Plaintiffs Do Not Cite Any Cases Rejecting Federal Jurisdiction Over Claims Like Theirs.

Plaintiffs do not cite a single case rejecting federal jurisdiction over claims like the ones at issue here, nor a single case endorsing their alternative view of this legal framework.  Instead, they try to dismiss the controlling case law by labeling the cases cited above as "confus[ed]," "outdated," "mistake[n]," or otherwise distinguishable.  Mot. at 8, 23.  But their arguments for ignoring this authority are not persuasive.

According to Plaintiffs, *Oneida* supports federal jurisdiction over, at most, "state-law causes of action to establish aboriginal title."  Mot. at 15.  They likewise suggest that *Oneida* is limited to trespass claims.  *See, e.g.*, *id.* at 23.  But the comprehensive body of case law discussed above rejects such a cramped approach, and a myopic focus on particular causes of action.  To the contrary, these cases make clear that claims for "damages to Indian land," *Henningson*, 626 F.2d at 714, damages "for irreparable injury to the land," *Owens Valley*, 185 F.3d at 1033 n.4, and "damages for injury to property within" tribal boundaries, *Pueblo of Isleta*, 570 F.2d at 300, are all broadly encompassed within the rights to tribal land that are "based on federal common law" and subject to federal jurisdiction.  *Oneida II*, 470 U.S. at 236; *see also Owens Valley*, 185 F.3d at 1033 n.4 (referring to "trespass *or other encumbrance* on Indian land") (emphasis added).  This makes sense, for the "existential threats" alleged by Plaintiffs to their tribal lands, including "destruction" of lands and natural resources and sea-level rise, would affect Plaintiffs' rights over those lands just as much as a trespass or title dispute would.  Makah Compl. ¶¶ 1.7, 4.186, 4.187; Shoalwater Bay Compl. ¶¶ 1.7, 4.186, 4.187.

Plaintiffs also proffer an alternative interpretation of *Owens Valley* under which federal question jurisdiction exists only if there is an "actual controversy" regarding whether the Indian tribe has the right to occupy the land.  Mot. at 22.  On that basis, they argue that *Mescalero Apache Tribe* and

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

19

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

*Pueblo of Isleta* conflict with Ninth Circuit authority and should be disregarded. *Id.* at 22–23. Plaintiffs point to language in *Owens Valley* that the case did not "implicate the Bishop Tribe's federal right of possession" or require "interpretation of a federal right of possession." 185 F.3d at 1033. The *Owens Valley* court was clear, however, that this language referred to the fact that both parties—the Indian housing authority and its tenant—were members of the Bishop Tribe and that the housing authority plaintiff was merely "assert[ing] its rights as a landlord" and "sub-lessor," *id.*; in the context of that intra-tribe landlord-tenant dispute, the tribe's "federal right of possession" was simply not at issue. *Id.* For these reasons—and not because the tribe's right to occupy land was undisputed—"the suit [did] not arise under federal law." *Id.*; *see also County of Mono*, 2021 WL 3185478, at *4 ("[T]he Bishop Tribe's possessory right to the land was not at stake because both parties to the *Owens Valley* action were part of the Bishop Tribe."). No other reading is compatible with *Owens Valley*'s favorable citation to *Pueblo of Isleta* and *Mescalero Apache Tribe*, given that an explicit basis for those cases' endorsement of federal jurisdiction was that it was immaterial that "the Indians [had] possession of their reservation and their title is clear and undisputed." *Mescalero Apache Tribe*, 503 F.2d at 338.[5]

Finally, Plaintiffs label the language in some of these cases as "dicta," noting various factual distinctions or that some of the cases rejected federal jurisdiction. Mot. at 21, 22. But all these cases articulated binding or persuasive principles for applying *Oneida* that support federal jurisdiction here. Some cases did not find federal jurisdiction, but they did so in materially different circumstances—a breach of contract suit in *Henningson*, a landlord-tenant dispute in *Owens Valley*, a workplace personal injury suit in *Begay*—while distinguishing those circumstances from claims, like those here, for damages to tribal lands and resources.

**B.    In The Alternative, Removal Is Proper Under *Grable*.**

Even if the Court were to analyze the case under *Grable*, Plaintiffs' claims arise under federal law. Here, the *Grable* standard is amply satisfied because Plaintiffs bring suit to vindicate federally

---

[5]    To the extent that *Owens Valley* could be construed as Plaintiffs suggest, this Court should not adopt such a reading because it is inconsistent with the case law cited above, and because *Owens Valley* is non-precedential.

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

20

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

derived rights to tribal lands, and because they seek damages for health care costs borne in many instances by the federal government pursuant to federal law.

**1.    Claims To Protect Federally Derived Rights To Tribal Lands Arise Under Federal Law.**

Claims by Indian tribes relating to possessory rights or damages to tribal lands meet the *Grable* standard. *Carney* held that complete preemption supported federal jurisdiction over a removed property dispute related to tribal land, specifically tidelands. 551 F. Supp. 3d at 1051–52. But the Court *also* concluded that jurisdiction arose under *Grable*. *Id.* at 1049–51. As the Court explained, "[i]t does not take a lot to conclude that the Tribe's right to the tidelands is a substantial issue from the perspective of federal law," given that this right was anchored (as here) in a treaty and executive order. *Id.* at 1047, 1050. Moreover, the Court held that "resolving the Tribe's rights as they relate to the tidelands in federal court would not upset the federal-state balance." *Id.* at 1050. To the contrary, the Court found that "Congress has expressed a preference to make federal courts available to Indian tribes and has singled out Indian property rights as particularly important." *Id.* In sum, "[t]he Tribe's aboriginal right to the tidelands [was] 'an important issue of federal law that sensibly belongs in federal court.'" *Id.* at 1051 (quoting *Grable*, 545 U.S. at 315). So too here. Because Plaintiffs allege damages to tribal lands, including from "accelerating sea-level rise" and "coastal flooding," Makah Compl. ¶ 4.187(a), Shoalwater Bay Compl. ¶ 4.187(a), assessing the extent of the tribal property interest created by federal law and treaty and allegedly affected by Defendants' conduct raises federal questions.

*Gila River Indian Community v. Cranford* is also instructive. In that case, the district court found federal jurisdiction under 28 U.S.C. §§ 1331 and 1362 over an action by an Indian tribe seeking to enforce its water rights. 459 F. Supp. 3d at 1249, 1251–55. In so doing, the court applied principles consistent with *Grable*. The court noted that "[i]n the Ninth Circuit, courts have jurisdiction over a tribal suit brought under § 1331 when the case 'presents a substantial issue of federal law.'" *Id.* at 1254 (quoting *Coeur d'Alene Tribe*, 933 F.3d at 1054, 1057). The court then found that "[a] case brought by a tribe to protect its water rights will nearly always require recourse to federal law" because such rights "are created by the federal government and rooted in federal law," requiring "recourse to federal

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

21

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

law" such as treaties, executive orders, and statutes.  *Id.* at 1254–55.  The court expounded more broadly:

> If a tribe sues to protect a property right that is federally derived . . . the court must look to that right's origin in federal law to determine the existence and scope of that right. Just as federal law provides the source and defines the scope of tribal power, federal law provides the source and defines the extent of tribal property interests.  By virtue of being federally derived, then, tribal property rights raise a substantial issue of federal law.

*Id.* at 1255 n.13.

Such a description could be applied to this case verbatim.  Plaintiffs seek to protect their right to "enjoy . . . property."  Makah Compl. ¶ 5.4; Shoalwater Bay Compl. ¶ 5.4.  Nuisance claims seeking to vindicate such rights require interference with existing "property rights."  *Animal Legal Def. Fund v. Olympic Game Farm, Inc.*, 1 Wash. 3d 925, 934–37 (2023) (declining to expand public nuisance beyond interference with property rights).  And here, determination of the existence and scope of Plaintiffs' property rights turns on federal law.  Plaintiffs' rights to their tribal lands were established by federal law, either treaty or executive order.  Makah Compl. ¶ 2.1; Shoalwater Bay Compl. ¶ 2.1. What's more, as to the Makah Indian Tribe, Plaintiff alleges damages to tribal lands and natural resources, including "forest lands and coastal resources," that are reserved for Plaintiff via treaty with the United States.  *See* Makah NOR ¶ 20.  And treaties, *Cranford* made clear, are federal law supporting jurisdiction.  *See also, e.g.*, *Skokomish Indian Tribe v. United States*, 410 F.3d 506, 512 (9th Cir. 2005) (noting that Indian treaties "constitute the supreme law of the land"); *Nez Perce Tribe v. Idaho Power Co.*, 847 F. Supp. 791, 799 (D. Idaho 1994) ("The courts have consistently held that 28 U.S.C. § 1362 creates federal jurisdiction when an Indian tribe brings a tort action, if the interest which the tribe alleges to have been injured or damaged is created by treaty or other federal law.").  Finally, nuisance claims, like Plaintiffs', alleging interference in the right to "enjoy . . . property," Makah Compl. ¶ 5.4, require interference with existing "property rights," the scope of which here turns on federal law.

Plaintiffs' attempt to rebut *Cranford* actually reinforces why federal jurisdiction is proper even under *Grable*.  Plaintiffs concede that *Cranford* "applied a *Grable*-like analysis," finding that the tribe's complaint "required resolution of a 'substantial' federal question."  Mot. at 25 (quoting *Cranford*, 459 F. Supp. 3d at 1254).  Specifically, the resolution of the case "require[d] recourse or reference to federal

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

22

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

law," *Cranford*, 459 F. Supp. 3d at 1254—because, as Plaintiffs acknowledge, the tribal water rights were "established by federal law," including executive orders. Mot. at 25. But here as well, the foundations of Plaintiffs' claims—their possessory interests in tribal lands—implicate substantial federal issues. It is Plaintiffs' rights and interests in these lands which they seek to vindicate with their suits.

Plaintiffs also argue that the federal issues raised in this case are not substantial or disputed. Mot. at 17–18. But as the above case law makes clear, suits to protect federally derived rights to tribal lands and property interests necessarily raise substantial questions of federal law. And Plaintiffs' lawsuits raise numerous disputed issues related to the "extent" of federally derived rights. *Cranford*, 459 F. Supp. 3d at 1255. As discussed throughout, these include if and how Plaintiffs' federally derived tribal land and property rights are affected by Defendants' alleged actions; if and how treaty provisions are impacted; and the extent to which Plaintiffs may recover for health care costs borne by the federal government under federal law.

In short, whether analyzed under *Grable* or as complete preemption, Plaintiffs' claims for damages to federally protected tribal lands and resources are removable.

### 2. Claims To Recoup Health Care Costs Funded By The Federal Government Pursuant To Federal Statute Arise Under Federal Law.

Plaintiffs also seek to recoup alleged increased costs of health care provided to tribal members because of the purported impacts of global climate change. *See* Makah Compl. ¶¶ 1.7, 4.1, 4.111, 4.186, 5.4, 5.15; Shoalwater Compl. ¶¶ 1.7, 4.1, 4.111, 4.186, 5.4, 5.15; *see also* Mot. at 1 ("complaints allege . . . harm to public health"). This provides an independent basis for federal jurisdiction under *Grable* because health care for tribal members is funded by the federal government pursuant to a comprehensive federal regime. "Congress has unambiguously declared that the federal government has a legal responsibility to provide health care to Indians," stemming "from the 'unique relationship' between Indians and the federal government." *White v. Califano*, 581 F.2d 697, 698 (8th Cir. 1978). Under federal law, the federal government "funds a vast array of medical treatment . . . for individual members of Indian Nations [and] does so exclusively by Congressional appropriations and federal monies," including through the Indian Health Service and self-determination contracts with Indian tribes. *Acoma Pueblo*, 2001 WL 37125252, at *6. Thus, in many cases, it is the federal government,

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

23

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

and not the Indian tribes, that suffers injury when health care services are provided to tribal members allegedly injured by tortfeasors.  Accordingly, whether Plaintiffs can establish cognizable injury or possess authority to seek reimbursement when the costs at issue were in many instances borne ulti-mately by the federal government, rather than Plaintiffs, necessarily raises "substantial questions of federal law."  *Grable*, 545 U.S. at 312.

*Acoma Pueblo v. American Tobacco Co.* is particularly instructive.  There, Indian tribes sued tobacco companies for an allegedly deceptive campaign to conceal the risks of smoking, and the tribes sued in state court to "recover[] . . . funds spent by tribal governments and the Indian Health Service for tobacco-related health costs."  2001 WL 37125252, at *1.  Though all claims were pleaded under state law, the defendants removed the case on the ground that the plaintiffs "cannot establish the ele-ments of any state law claim until there has been a preliminary determination that Plaintiffs state a cognizable injury entitling them to the reimbursement they seek[,]" which requires "interpretation of federal law."  *Id.* at *3.  Given the important federal interests in play, the district court denied remand.  *Id.* at *1.

The *Acoma Pueblo* court explained that "[i]n this case, unlike most cases resting on a state law tort claim, the fact of an injury is not readily demonstrable.  In this case an injury, a central element of . . . Plaintiffs' state law causes of action, cannot be established without an interpretation of federal law."  *Id.* at *7.  Because "construction of the Indian Health Care Act and statutes intrinsically related will determine whether Plaintiffs have an injury-in-fact," federal law was "pertinent not as a defense, but as the only means of deciding whether Plaintiffs stand in a position to have been harmed," and "[o]nly after these matters are established will Plaintiffs' allegations of fraud, negligence, negligent misrepre-sentation and other tortious acts be material."  *Id.*  Accordingly, *Acoma Pueblo* denied remand.

Like the tribes in *Acoma Pueblo*, Plaintiffs here sued Defendants alleging that a purported cam-paign of deception caused Plaintiffs to incur increased health care costs (on the theory that the purported campaign led to increased greenhouse gas emissions, which exacerbated climate change resulting in harm to Plaintiffs).  As in *Acoma Pueblo*, whether and the extent to which Plaintiffs suffered cognizable injury will require construction of federal statutes and reference to the comprehensive federal scheme

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

24

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

governing the funding and provision of Indian health care, including through tribal self-determination contracts and compacts, an inherently federal inquiry.  Thus, as in *Acoma Pueblo*, "[t]he Indian Health Care Act and related law is pertinent not as a defense, but as the only means of deciding whether Plaintiffs stand in a position to have been harmed, and if harmed, whether they may be compensated." *Id.*

Plaintiffs' assertion that they "have made no allegations concerning federal health programs" is immaterial.  Mot. at 18.  Under settled law, Plaintiffs "may not circumvent federal jurisdiction by omitting federal issues that are essential to [their] claim[s]." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (citation omitted).  Plaintiffs have alleged increased "health risks" from climate change and "increased costs associated" with those impacts.  Makah Compl. ¶¶ 4.186, 4.187; Shoalwater Bay Compl. ¶¶ 4.186, 4.187.  Given the comprehensive federal regime concerning tribal health care, which Plaintiffs do not contest, these allegations necessarily implicate federal health programs, federal funding, and the federal legal framework governing these matters.  And the overall issue raised—whether, and under what circumstances, Plaintiffs can seek to recover these costs—is certainly a substantial one.  Plaintiffs criticize *Acoma Pueblo* as "out of step" with the law, Mot. at 27, but the only authority they cite to support their argument (a remand order from *Cherokee Nation v. Morris & Dickson, Co.*, No. 6:23-cv-00237 (E.D. Okla. Mar. 19, 2024)) is inapt: the defendant there did not raise the healthcare cost argument Defendants make here, and the decision nowhere cites *Acoma Pueblo*.  Notably, Plaintiffs acknowledge that *Acoma Pueblo* applied an "earlier formulation of what became *Grable*." Mot. at 26.

## V.    CONCLUSION

For the foregoing reasons, and those set forth in Defendants' Notices of Removal, this Court should deny Plaintiffs' Consolidated Motion to Remand.  Defendants also respectfully request oral argument on Plaintiffs' Motion.

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

25

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

1     Counsel certifies that this memorandum contains 9,987 words, in compliance with the Local

2  Civil Rules and the Court's Stipulated Order of March 19, 2024.

3

4     Dated: May 9, 2024

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND          26
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

1    BRYNES KELLER CROMWELL LLP              ORRICK, HERRINGTON &
                                            SUTCLIFFE LLP
2    By: _s/ Bradley S. Keller_____
         Bradley S. Keller, WSBA #10665     By: _s/ Robert M. McKenna_____
3    By: _s/ Joshua B. Selig_____             Robert M. McKenna (WSBA No. 18327)
         Joshua B. Selig, WSBA No. 39628        rmckenna@orrick.com
4        1000 Second Avenue, 38th Floor         Mark S. Parris (WSBA No. 13870)
         Seattle, WA 98104                      mparris@orrick.com
5        Tel: (206) 622-2000                    Andrew Cook (WSBA No. 34004)
         Fax: (206) 622-2522                    andrew.cook@orrick.com
6        Email: bkeller@byrneskeller.com        401 Union Street, Suite 3100
         jselig@byrneskeller.com                Seattle, WA 98101
7                                               Telephone: 206.839.4300
                                                Facsimile: 206.839.4301
8
9    PAUL, WEISS, RIFKIND, WHARTON &         GIBSON, DUNN & CRUTCHER LLP
     GARRISON LLP
10                                               Theodore J. Boutrous, Jr. (*pro hac vice*)
         Theodore V. Wells, Jr. (*pro hac vice*)   tboutrous@gibsondunn.com
11       Daniel J. Toal (*pro hac vice*)          Andrea Neumann (*pro hac vice*)
         Yahonnes Cleary (*pro hac vice*)         aneumann@gibsondunn.com
12       Caitlin E. Grusauskas (*pro hac vice*)   William E. Thomson (*pro hac vice*)
         1285 Avenue of the Americas            wthomson@gibsondunn.com
13       New York, NY 10019-6064                Joshua D. Dick (*pro hac vice*)
         Tel.: (212) 373-3000                   jdick@gibsondunn.com
14       Fax: (212) 757-3990                     333 South Grand Ave.,
         Email: twells@paulweiss.com            Los Angeles, CA 90071
15       Email: dtoal@paulweiss.com             Tel: (213) 229-7000
         Email: ycleary@paulweiss.com           Fax: (213) 229-7520
16       Email: cgrusauskas@paulweiss.com
                                            *Attorneys for Defendants Chevron Corpo-*
17   *Attorneys for Defendants EXXON MOBIL*  *ration and Chevron U.S.A. Inc.*
     *CORPORATION and EXXONMOBIL OIL*
18   *CORPORATION*
19
20
21
22
23
24
25
26
27
28

1

CORR CRONIN LLP

STOEL RIVES LLP

2

By: _s/ Timothy A. Bradshaw_
   Timothy A. Bradshaw, WSBA No. 17983

By: _s/ Vanessa Soriano Power_
   Vanessa Soriano Power, WSBA

3

   Jeff Bone, WSBA No. 43965
   Victoria E. Ainsworth, WSBA No.

   No. 30777
   vanessa.power@stoel.com

4

   49677
   1015 Second Avenue, Floor 10

   Rachel H. Cox, WSBA No. 45020
   rachel.cox@stoel.com

5

   Seattle, WA 98104-1001
   (206) 625-8600 Phone

   STOEL RIVES LLP
   600 University Street, Suite 3600

6

   (206) 625-0900 Fax
   tbradshaw@corrcronin.com

   Seattle, WA 98101
   Telephone: (206) 624-0900

7

   jbone@corrcronin.com
   tainsworth@corrcronin.com

8

WILMER CUTLER PICKERING HALE
AND DORR LLP

ARNOLD & PORTER KAYE SCHOLER
LLP

9

10

   Hallie B. Levin (*pro hac vice forthcoming*)
   7 World Trade Center

   Nancy G. Milburn (*pro hac vice*)
   Diana E. Reiter (*pro hac vice*)

11

   250 Greenwich Street
   New York, NY 10007

   250 West 55th Street
   New York, NY 10019-9710

12

   Telephone: (212) 295-6710
   Facsimile: (212) 230-8888

   Tel.: (212) 836-8383
   Fax: (212) 715-1399

13

   Email: hallie.levin@wilmerhale.com

   Email: nancy.milburn@arnoldporter.com
   Email: diana.reiter@arnoldporter.com

14

   Matthew T. Martens (*pro hac vice forth-*
   *coming*)

15

   2100 Pennsylvania Avenue NW
   Washington, DC 20037

   John D. Lombardo (*pro hac vice*)
   777 South Figueroa Street, 44th Floor
   Los Angeles, CA 90017-5844

16

   Telephone: (202) 663-6921
   Facsimile: (202) 663-6363

   Tel.: (213) 243-4000
   Fax: (213) 243-4199

17

   Email: matthew.martens@wilmerhale.com

   Email: john.lombardo@arnoldporter.com

18

   Robert Kingsley Smith (*pro hac vice*
   *forthcoming*)

   Jonathan W. Hughes (*pro hac vice*)
   Three Embarcadero Center, 10th Floor

19

   60 State Street
   Boston, MA 02109

   San Francisco, CA 94111-4024
   Tel.: (415) 471-3100

20

   Telephone: (617) 526-6759
   Facsimile: (617) 526-5000

   Fax: (415) 471-3400
   Email: jonathan.hughes@arnoldporter.com

21

   Email: robert.smith@wilmerhale.com

22

*Attorneys for Defendants ConocoPhillips and*
*ConocoPhillips Company*

*Attorneys for Defendants BP p.l.c. and BP*
*America Inc.*

23

24

25

26

27

28

DEFS.' RESP. TO PLAINTIFFS'
CONSOL. MOT. TO REMAND                                    28
No. 2:24-cv-00157-JNW
No. 2:24-cv-00158-JNW

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000

1   SUMMIT LAW GROUP, PLLC                         K&L GATES LLP

2   By:  *s/ Alexander A. Baehr*                   By:  *s/ Kari L. Vander Stoep*
          Alexander A. Baehr, WSBA No. 25320            Kari L. Vander Stoep, WSBA # 35923
3         alexb@summitlaw.com                            925 Fourth Avenue, Suite 2900
    By:  *s/ Molly J. Gibbons*                           Seattle, Washington 98104-1158
4         Molly J. Gibbons WSBA #58357                   Tel: +1 206 623 7580
          mollyg@summitlaw.com                           Fax: +1 206 623 7022
5                                                        Email: kari.vanderstoep@klgates.com
    LATHAM & WATKINS LLP
6                                                   KELLOGG, HANSEN, TODD, FIGEL &
          Sean M. Berkowitz (*pro hac vice*)        FREDERICK, P.L.L.C.
7         sean.berkowitz@lw.com
          330 N Wabash Ave., Suite 2800                   David C. Frederick (*pro hac vice*)
8         Chicago, IL 60611                               James M. Webster, III (*pro hac vice*)
          Telephone: (312) 876-7700                       Daniel S. Severson (*pro hac vice*)
9                                                         Daren G. Zhang (*pro hac vice*)
          Nicole C. Valco (*pro hac vice*)               1615 M Street, N.W., Suite 400
10        nicole.valco@lw.com                             Washington, D.C. 20036
          Katherine A. Rouse (*pro hac vice*)            Telephone: (202) 326-7900
11        kathrine.rouse@lw.com                           Facsimile: (202) 326-7999
          505 Montgomery St., Suite 2000                  Email: dfrederick@kellogghansen.com
12        San Francisco, CA 94111-6538                    Email: jwebster@kellogghansen.com
          Telephone: (415) 391-0600                       Email: dseverson@kellogghansen.com
13                                                        Email: dzhang@kellogghansen.com
    *Attorneys for Defendants Phillips 66 and*
14     *Phillips 66 Company*                        *Attorneys for Shell plc and Shell USA, Inc.*
                                                    *(f/k/a Shell Oil Company)*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

GIBSON, DUNN & CRUTCHER LLP
333 SOUTH GRAND AVENUE,
LOS ANGELES, CA 90071-3197
213.229.7000